UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO · 97-3359-CIV-GOLD

MAGISTRATE BANDSTRA

JANE DOE,

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED
a Bahamian corporation

Defendant

_____/

## AMENDED AFFIDAVIT IN OPPOSTION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FORUM NON CONVENIENS

I, Reginald H. Lobosky, counsel and attorney-at-law, Shirley House, 50 Shirley Street, Nassau, Bahamas, make oath and say as follows·-

1        That I am a counsel and attorney-at-law in practice at the Bar of the Bahamas   I hold a Bachelors of Laws degree with honours and a Masters of Laws degree from the University of London   I am a member of the Bahamas Bar Association having been called to the Bar of England of Wales at Lincoln's Inn in 1975 and the Bar of the Bahamas in 1977.  My curriculum vitae is attached as Exhibit "A".  I was a partner in the law firm of Messrs Higgs & Johnson and I have been associated with this firm since the commencement of my practice until 2nd January, 1997 when I formed the firm Lobosky & Lobosky

2        I make this Affidavit as an adviser on Bahamian law to Robert L Parks, Esquire, attorney of record for the Plaintiffs in this matter

3       This Affidavit deals with various questions including the elements comprising Negligence in Bahamian law, with specific emphasis on negligent security; forseeability in Bahamian law, duties owed to invitees, whether Bahamian law derives from the Common Law, the question of contingency fees as it applies to Bahamian law, the time it takes to get a hearing in a Civil Action before the Bahamian Courts, the power of the Bahamian Court to compel witnesses abroad to appear and give evidence; the rules on Discovery and the availability of a Jury Trial in Civil Actions.

4       The General Principles of the Law of Negligence as a feature of  Bahamian jurisprudence is derived from English Common Law. Negligence as a specific tort is the breach of a legal duty to take care which results in damage, undesired by the Defendant, to the Plaintiff.  Thus, the elements comprising Negligence are: (a) a legal duty on the part of (A) towards (B) to exercise care in such conduct of (A) as falls within the scope of the duty; (b) breach of that duty; (c) consequential damage to (B)  Therefore, in the tort of negligence, breach of "duty" is the chief ingredient of the tort, in fact there is no other except damage to the Plaintiff  What amounts to negligence will depend on the facts of each particular case  It may most usually consist in omitting to do something which ought to be done either in a different manner or not at all.  Where there is no duty to exercise care, negligence in the popular sense has no legal consequence.  In Bahamian law where there is a duty to exercise care, reasonable care must be taken to avoid acts or omissions which can be reasonably foreseen to be likely to cause physical injury to persons or property.  The degree of care required in the particular case depends on the surrounding circumstances and may vary according to the amount of risk to be encountered and to the magnitude of the

5       It is also a clear feature of Bahamian Law of Negligence that a duty to the Plaintiff to take reasonable care for his interest cannot arise unless the Defendant can reasonably be expected to foresee that the Plaintiff is likely to be injured by his conduct   Thus prima facie a duty of care is owed to those whom the Defendant could reasonably contemplate may be harmed by his action or omission; however, even though a duty is owed to the Plaintiff the Defendant is not liable if the harm caused to the Plaintiff is not of a foreseeable kind.  In this context the general standard of foreseeability is based on the concept of the reasonable man.  In Bahamian Law the characteristic features of the reasonable man is a hypothetical test which is left to the judge to decide; and since he is an abstraction, the standard of reference he provides can be applied to particular cases only by the intuition of the Court.  Thus the standard is objective and impersonal and subject to modification depending on the particular circumstances in which the judge funds himself.  Now with respect to the concept of reasonable foresight of risk, the test is based not only upon existing facts as known to the Defendant but also upon those which he had a reasonable opportunity to learn, and a person may reasonably be expected to take extra precautions on account of better knowledge of the facts.  Thus in Bahamian law foreseeability is the principle test of whether damages are recoverable in negligence, the foresight of reasonable man determining responsibility.  The Plaintiff must prove that the Defendant's wrongdoing was a cause, although not necessarily the sole or dominant cause, of his injuries; and was not too remote as to extinguish liability on the basis on non-forseeability

6       With respect to the duty owed by Atlantis to invitees the position in Bahamian Law is that the invitee is in the position of a guest who is on the

of the guests, and is therefore liable for any damage resulting to them from his negligence while they are his guests. His duty to take reasonable care extends to all food and accommodation which he provides or holds himself out as providing for his guests.

7    With respect to the issue as to the extent to which the Bahamian law derives from English Common Law, it must be noted that the Bahamas Courts rely heavily on English Common Law authority. This is essentially so because the Bahamas possesses few Law Reports of its own and as a result, judges regard English case law as highly persuasive authority. However, where there are judgments from the Privy Council, which have been referred by the Bahamas Court these will take precedence over English Common Law and would be binding on our Courts.

8.    It is clear in Bahamian law that contingency fee contracts of representation are impermissible in the Bahamas and taking cases on such a basis directly violates CH. 44, The Bahamas Bar Regulations (Code of Professional Conduct), Rule X   A copy of Rule X is attached as Exhibit "B" and provides "an attorney should not enter into any agreement or stipulate payment only in the event of success in any suit, action or other contentious proceedings for which he is retained or employed to prosecute " Accordingly, Jane Doe may be prevented from continuing her action in a Bahamian forum if unable to afford and pay an hourly fee and monthly cost bills. My customary hourly fee, which is reasonable and typical of attorneys of my experience and reputation, is $325 00 per hour   Associates are billed at a lesser rate.

9    Were Jane Doe's action to be re-filed in a Bahamian Court, her present attorney, Robert L Parks, would be prohibited from prosecuting this action on her behalf in a Bahamian Court   Mr Parks, although a Bahamian citizen, does not meet the qualifications of admission to the Bahamas Bar   A

attached as Exhibit "B". These requirements must be satisfied even to prosecute a single isolated action in a Bahamian Court.

10    Moreover by virtue of Order 62 23 of the Rules of the Supreme Court, in Civil actions before the Bahamian Courts where the Plaintiff is resident outside the jurisdiction or has no substantial assets within the jurisdiction an application may be made to the Court to have the Plaintiff give security for costs and the judge has the power in his sole discretion to make such an Order with which the Plaintiff must comply in order for proceedings to commence be continued after commencement in this jurisdiction. See O.23 attached as Exhibit "C".

11    A further hindrance to Jane Doe's re-filing her personal injury suit in a Bahamian Court is the probability that if unsuccessful at trial, she could be compelled to pay the Defendants' attorney fees and costs, as well as her own. See O.59 r.3, attached as Exhibit "C" " D" and corresponding English Law Order 62, r. 3, attached as Exhibit "D" "E"

12.    The prevailing party's costs and attorney fees are usually taxed against the losing party, although it is within the discretion of the court not to do so. The typical award of fees and costs awarded to the prevailing party is in the range of 60 - 70 percent

13.    The current condition of the Bahamian Court system is such that it likely would take three to four years for Jane Doe's case to get to trial   This is not because of lack of efficiency in the Court system, but rather is due to the paramount status presently afforded criminal actions

14    It must also be noted that under Bahamian Law the Courts have no power to compel foreign persons living abroad and out of its jurisdiction to give evidence in its Courts   The only way this can be done is by letters Rogatory which is a complicated, protracted and expensive process

With respect to the question of Discovery by Order 24 of the Rules of the Supreme Court of the Bahamas, mutual discovery of documents is required to take place after the close of pleadings in an action begin by writ of all documents which are or have been in the parties possession, custody or control or power relating to matters in question in the action. In this regard there must be discovery of any document which contains information which may enable the party seeking discovery to either advance his own case or to damage that of his adversary, or if it is a document which may fairly lead him to a train of inquiry which may have either of these two consequences. Thus in this respect medical records of the Plaintiff held by treating physicians in the United States would be open to discovery and the Plaintiff would be obliged to secure the release of these documents

16.     In my opinion it is unlikely that the Bahamian court would grant Jane Joe a jury trial   The Juries Act, Chapter 47, expressly provides for trials by jury in civil proceedings, and, procedurally, the rules of our Supreme Court also provide for trial by jury in civil cases by Order 33, Rule 2.   However, Orders for trial by jury are rarely made   The principles to be applied in determining whether or not a court will allow a jury trial are found in the notes to Order 33 of the English Rules of the Supreme Court.  In actions for personal injury, a jury trial will not be ordered unless there are exceptional circumstances.  In Bahamian law it is not an exceptional circumstance that the injuries are severe, nor that they are unusual   Bahamian courts rarely, if ever, hear civil trials by jury.  In practice, civil trials are never heard by juries except in some defamation cases in the Bahamas   Moreover, Section 36 of the Juries Act states that nothing contained in the Act shall extend or be construed to extend to alter, abridge or affect any power or authority which the Court or judge now has or any <u>practice</u> or <u>forum</u> in regard to trials by jury

provisions in Section 36 may well preclude a Plaintiff or a Defendant from hearing a civil trial heard by jury, should a judge refuse to exercise his discretion to allow same   See Order 33, Rule 2, attached as Exhibit "E" "F" and Section 36 of the Juries Act, Chapter 47, as Exhibit "F" "G"

17.   Further affiant sayeth naught.

SWORN to at Nassau, The Bahamas )
                                )
this 12th day of  May, A.D , 1998   )

Before me,

NOTARY PUBLIC

My commission expires December 31st, 1998

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO . 97-3359-CIV-GOLD

MAGISTRATE BANDSTRA

Dated this          day of                , 1998

JANE DOE,

                                        Plaintiff,

        vs.

SUN INTERNATIONAL HOTELS LIMITED
a Bahamian corporation

                                        Defendant

---

**IN OPPOSTION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR FORUM NON
CONVENIENS**

---

# REGINALD HARCOURT LOBOSKY

Curriculum Vitae - 20th January, 1998

**BORN:**          5th March, 1933
Nassau, Bahamas

**EDUCATION:**    Eastern Senior School, **Nassau, Bahamas**

University of London, **London, England**
(LL.B., LL.M. Degrees)

## PROFESSIONAL QUALIFICATIONS:

Barrister at Law (Lincoln's Inn)
Called to the Bar of England and Wales 1975

Counsel and Attorney of the Supreme Court of The Bahamas

Called to The Bahamas Bar, 1977

Associate of The Chartered Institute of Arbitrators, London

## LEGAL ASSOCIATIONS:

Member of:-

(a)    Bar of England and Wales

(b)    The Bahamas Bar Association

(c)    International Bar Association

(d)    Served as a Member of The Bahamas Bar Council from 1978 to 1982

(e)    Served as Honorary Secretary of The Bahamas Bar Council from 1979 to 1982

(f)    Served as President of The Bahamas Bar Association and Chairman of The Bar Council from 1982 to 1983.



EXHIBIT
A

- 2 -

**HIGGS & JOHNSON:**

|  |  |
|---|---|
| Joined the Firm | May 1977 |
| Became Partner | From 1980 to<br>31st December, 1996 |
| **Areas of Practice:** | Civil Litigation, Banking, Labour<br>Relations & Environmental Law |

**LOBOSKY & LOBOSKY:**

|  |  |
|---|---|
| Established new Firm | 1st January, 1997 |
| **Areas of Practice:** | Civil Litigation, Employment and<br>Industrial Relations Law,<br>Environmental Law, Mutual Funds,<br>Shipping, Admiralty and Maritime<br>Law, Alternative Dispute Resolution,<br>Investment Law, Trusts (including<br>problems related to Mutual Funds),<br>Corporate and Company Law,<br>Insurance, Conveyancing, Mergers<br>and Acquisitions (Public and Private<br>Companies), Securities Law. |

**ADDITIONAL DATA:**

Member of The Bahamas Senate
from 1969 until 1972.

President of The Bahamas
Chamber of Commerce from
1995 until 1997.

Member of The Securities Board
(Current).

Member of The Advisory Committee
on Industrial Relations to The
Minister responsible for Labour
matters (Current).

Member of the Securities Market
Task Force from 1992 until 1997.

President, Bahamas Employers
Confederation (Current).



# THE
# SUBSIDIARY LEGISLATION

OF

# THE BAHAMAS

**1799—1987**

IN FORCE ON THE

**30th June, 1987**

As amended by the Statute Law Revision Act, 1987

———

### REVISED EDITION.

Prepared under the authority of the Law Reform and Revision Act (Ch 3)

BY

**SIR GORDON BRYCE, C B E**
of the Middle Temple, Barrister-at-Law

———

IN SIX VOLUMES

# VOLUME II

Containing Chapters 41 to 181.

———

PUBLISHED BY THE GOVERNMENT OF THE COMMONWEALTH OF THE BAHAMAS

———

PRINTED BY
BPCC Wheatons Ltd, Exeter
1989

EXHIBIT
B



3. In the context of the foregoing paragraph, persons closely related to or associated with the attorney include his spouse, son or daughter, any relative of the attorney (or of his spouse) who lives under the same roof, a trust or estate in which the attorney has a subtantial beneficial interest or for which he acts as a trustee or in a similar capacity, and a corporation of which the attorney is a director or in which he or some person closely related to or associated with him holds or controls, directly or indirectly, a significant number of shares.

4. Subject to any special rules applicable to the particular public office, the attorney holding such office should, when he sees that there is a possibility of a conflict of interest, disqualify himself by declaring his interest at the earliest opportunity, and he should not take part in any consideration or discussion of or vote with respect to the matter in question.

5. When the attorney or any of his partners or associates is a member of an official body he should not appear professionally before that body. However subject to the rules of the official body it would not be improper for him to appear professionally before a committee of such body if such partner or associate is not a member of that committee.

6. The attorney should not represent in the same or any related matter any persons or interests with whom he has been concerned in an official capacity. Likewise, he should avoid advising upon a ruling of an official body of which he is a member or of which he was a member at the time the ruling was made.

7. By way of corollary to the Rule, relating to Confidential Information, confidential information acquired by the attorney by virtue of his holding public office should be kept confidential and should not be divulged or used by him merely because he has ceased to hold such office.

8. Generally speaking, the Bar Council will not be concerned with the execution of the official responsibilities of a lawyer holding public office, but if his conduct in office reflects adversely upon his integrity or his professional competence, he may be subject to disciplinary action.

Rule X.                    FEES.

The attorney should not
    (a) stipulate for, charge or accept any fee which is not fully disclosed, fair and reasonable,
    (b) appropriate any funds of his client held in trust or otherwise under his control for or on account of his fees

Case 1:97-cv-03359-ASG   Document 41   Entered on FLSD Docket 03/10/1998   Page 13 of 43

without the express authority of his client, except in accordance with the custom or accepted practice of the profession;

(c) enter into any agreement or stipulate payment only in the event of success in any suit, action or other contentious proceedings for which he is retained or employed to prosecute.

### Commentary.

1. A fair and reasonable fee will depend upon and reflect such factors as

(a) the time and effort required and spent;

(b) the difficulty and importance of the matter;

(c) whether special skill or service has been required and provided;

(d) the customary charges of other attorneys of equal standing in like matters and circumstances;

(e) the amount involved or the value of the subject matter;

(f) the results obtained,

(g) scales advised by the Bar Association,

(h) such special circumstances as loss of other employment, uncertainty of reward, and urgency

A fee will not be fair and reasonable if it is one which cannot be justified in the light of all pertinent circumstances, including the factors mentioned, or is so disproportionate to the services rendered as to introduce an element of fraud or dishonesty.

2. It is in keeping with the best traditions of the legal profession to reduce or waive a fee in a situation where there is hardship or poverty, or the client or prospective client would otherwise effectively be deprived of legal advice or representation.

3. Breach of this Rule and misunderstandings respecting fees and financial matters bring the legal profession into disrepute and reflect adversely upon the general administration of justice. The attorney should try to avoid controversy with his client with respect to fees, and he should be ready to explain the basis for his charges (especially if the client is unsophisticated or uninformed as to the proper basis and measurements for fees) He should give the client a fair estimate of fees and disbursements, pointing out any uncertainties involved, so that the client may be able to make informed decisions. When something unusual or unforseen occurs which may substantially affect the amount of the fee, the attorney should forestall misunderstandings or disputes by explanations to his client.

Whilst there may be special circumstances in particular cases which justify the quotation or acceptance of a fee less than the minimum scale as advised from time to time by the Bahamas Bar

906     **CH.44.]**       **THE BAHAMAS BAR.**

Association it is generally considered improper deliberately to undercut fees by quoting or accepting a reduced fee from any prospective new client and especially if it is known or there are reasonable grounds to believe that such person is or has been represented by another attorney in The Bahamas.

4. The attorney should not charge his client interest on an overdue account unless permitted by law, and then only after adequate notice to the client.

5. In matters where the attorney is acting for two or more clients on the same side it is his duty to divide his fees and disbursements equitably between them in the absence of agreement otherwise.

6. A fee will not be a fair one within the meaning of the Rule if it is divided with another attorney who is not a partner or associate unless (a) the client consents, either expressly or impliedly to the employment of the other attorney, and (b) the fees are divided in proportion to the work done and responsibilities assumed.

7. The fiduciary relationship between the attorney and his client requires full disclosure in all financial matters between them and prohibits the acceptance by the attorney of any hidden fees. No fee, reward, costs, commission, interests, rebate, agency or forwarding allowance or other compensation whatsoever related to professional employment may be taken by the attorney from anyone other than the client without full disclosure to and the consent of the client or, where the attorney's fees are being paid by someone other than the client such as a borrower, or a personal representative, the consent of such other. So far as disbursements are concerned, only bona fide and specified payments to others may be included, and if the attorney is financially interested in the person to whom the disbursements are made, such as an investigating, brokerage or copying agency, he must expressly disclose this fact to his client.

8. It is the generally accepted practice in real estate transactions and collection matters for the attorney to deduct his fees and disbursements from moneys paid to him on behalf of his client.

---

Rule XI.          **WITHDRAWAL.**

The attorney owes a duty to his client not to withdraw his services except for good cause and upon notice appropriate in the circumstances.

*Commentary.*

1. Although the client has the right to terminate the lawyer-client relationship at will, the attorney has no such freedom of

Exhibit "C"

# THE

# SUPREME COURT PRACTICE

## 1979

### VOLUME 1

### PART 1

**LONDON**

SWEET & MAXWELL LTD.        STEVENS & SONS LTD.

11 NEW FETTER LANE, LONDON EC4P 4EE

EXHIBIT

C

ORDER 23

(R S. C. 1965)

SECURITY FOR COSTS

**Security for costs of action, etc.** (O. 23, r. 1).

23/1 1.—(1) Where, on the application of a defendant to an action or other proceeding in the High Court, it appears to the Court—

    (a) that the plaintiff is ordinarily resident out of the jurisdiction, or

    (b) that the plaintiff (not being a plaintiff who is suing in a representative capacity) is a nominal plaintiff who is suing for the benefit of some other person and that there is reason to believe that he will be unable to pay the costs of the defendant if ordered to do so, or

    (c) subject to paragraph (2), that the plaintiff's address is not stated in the writ or other originating process or is incorrectly stated therein, or

    (d) that the plaintiff has changed his address during the course of the proceedings with a view to evading the consequences of the litigation,

then if, having regard to all the circumstances of the case, the Court thinks it just to do so, it may order the plaintiff to give such security for the defendant's costs of the action or other proceeding as it thinks just.

(2) The Court shall not require a plaintiff to give security by reason only of paragraph (1) (c) if he satisfies the Court that the failure to state his address or the mis-statement thereof was made innocently and without intention to deceive.

(3) The references in the foregoing paragraphs to a plaintiff and a defendant shall be construed as references to the person (howsoever described on the record) who is in the position of plaintiff or defendant, as the case may be, in the proceeding in question, including a proceeding on a counterclaim.

**Manner of giving security** (O. 23, r. 2).

23/2 2. Where an order is made requiring any party to give security for costs, the security shall be given in such manner, at such time, and on such terms (if any), as the Court may direct

**Saving for enactments** (O. 23, r 3)

23/3 3. This Order is without prejudice to the provisions of any enactment which empowers the Court to require security to be given for the costs of any proceedings

23/1–3/1 **Scope of this Order.**—This Order is taken from R S C. (Rev), 1962, O. 23, which replaced the former O. 65, rr. 6, 6A, 6B and 7, and embodied the previous case law dealing with the power of the Court to order security for costs. It must be read subject to the powers of the Court to order security for costs conferred by any enactment, see r. 3, supra; the Acts referred to by this rule are, the Companies Act 1948, s. 447; and the Arbitration Act 1950, s. 12 (6) (a) (see *Bilcon* v. *Fegman Investments* [1966] 2 Q.B. 221).

As to International Conventions affecting Security for Costs, see this (n.), *infra*.

23/1–3/2 **Discretionary Power to Order Security for Costs.**—The main and most important change effected by this Order concerns the nature of the discretion of the Court on whether to order security for costs to be given. Rule 1 (1) provides that the Court

[ 390 ]

**[O. 23, rr. 1–3**

## SECURITY FOR COSTS

may order security for costs " if, having regard to all the circumstances of the case, the Court thinks it just to do so ". These words have the effect of conferring upon the Court a real discretion, and indeed the Court is bound, by virtue thereof, to consider the circumstances of each case, and in the light thereof to determine whether and to what extent or for what amount a plaintiff (or the defendant as the case may be) may be ordered to provide security for costs. It is no longer, for example, an inflexible or rigid rule that a plaintiff resident abroad should provide security for costs. In particular, the former O. 65, r. 6s, which had provided that the power to require a plaintiff resident abroad, suing on a judgment or order or on a bill of exchange or other negotiable instrument, to give security for costs was to be in the discretion of the Court, has been preserved and extended to all cases by Rule 1 (1), *supra*.

In exercising its discretion under Rule 1 (1), *supra*, the Court will have regard to all the circumstances of the case. Security cannot now be ordered as of course from a foreign plaintiff, but only if the Court thinks it just to order such security in the circumstances of the case. For the circumstances which the Court might take into account whether to order security for costs, see *per* Lord Denning M.R. in *Sir Lindsay Parkinson & Co. Ltd.* v. *Triplan Ltd.* [1973] Q.B. 609; [1973] 2 W.L.R. 632, 646–47; [1973] 2 All E.R. 273, 285–86, and see " Plaintiff a Limited Company," para. 23/1–3/12, *infra*. A major matter for consideration is the likelihood of the plaintiff succeeding. If there is a strong prima facie presumption that the defendant will fail in his defence to the action, the Court may refuse him any security for costs (see *per* Collins, J., in *Crosat* v. *Brogden*, [1894] 2 Q. B. 30 at p. 33 (the judgment of the C. A. in that case was in substance reversed by the former O. 65, r. 6s, made in 1920, which in substance is repeated in Rule 1 (1), *supra*) ). It may be a denial of justice to order a plaintiff to give security for the costs of a defendant who has no defence to the claim. Again, if a defendant admits so much of the claim as would be equal to the amount for which security would have been ordered, the Court may refuse him security, for he can secure himself by paying the admitted amount into Court (*Hogan* v. *Hogan* (No. 2), [1924] 2 Ir. R. 14). Further, where defendant admits his liability, plaintiff will not be ordered to give security (*De St. Martin* v. *Davis & Co.*, [1884] W. N. 86) even where he counterclaims (*Winterfield* v. *Bradnum* (1878), 3 Q. B. D. 324); and see *Re Contract and Agency Corp.* (1887), 57 L. J. Ch. 5, where a creditor, having under O 14 recovered judgment against a company, and issued execution, on which a return of nulla bona had been made, he was not required to give security for costs of a petition to wind up the company, nor will security be required if the plaintiff has an unsatisfied judgment against the defendant (*Bristowe* v. *Needham* (1842), 4 Mac. & G. 906) Formerly, the practice was to order security for costs even though there was pending a summons for judgment under O. 14 (see *Banque des Travaux* v. *Wallis*, [1884] W. N. 164, and an unreported case of *Golltieb* v. *Geiger*, Bucknill, J., at Chambers. March 8, 1905, affirmed C. A., July 3, 1905), but this practice no longer prevails in view of the wide discretion conferred by Rule 1 (1), *supra*.

In an infant case, security for costs against a party who is a parent would only be ordered in the most exceptional circumstances (*In Re B.* (*Infants*) [1965] 1 V. L. R. 946; [1965] 2 All E. R. 651n.). A defendant who initiates an interlocutory pplication does not thereby become " in the position of plaintiff " (*ibid.*).

**23/1–3/2A**

**Plaintiff Resident Abroad.**—A plaintiff who is ordinarily resident abroad may be ordered to give security for costs. The onus is on the defendant to prove that the plaintiff is " ordinarily resident " out of the jurisdiction. The question is one of fact and of degree; it does not depend upon the duration of the residence, but upon the way in which a man's life is usually ordered, and it contrasts with occasional or temporary residence (see *Levene* v. *I. R. C.*, [1928] A. C. 217 and *Lysaght* v. *I R C.*, [1928] A. C. 234, both decided under the Income Tax Acts). A plaintiff who makes a provisional decision to go and live abroad is not " ordinarily resident " out of the jurisdiction, at any rate so long as he has not left the country (*Appah* v. *Monseu*, [1967] 1 W.L.R. 893; [1967] 2 All E.R. 583)

Although O 23 does not conflict with the Treaty of Rome, the Court in exercising its discretion to order security for costs may take into account the fact that a plaintiff is resident within the Community (*Lands Den Hartog B.V.* v. *Stoppe* [1976] F S.R 497, security not ordered).

There is no longer any inflexible rule or practice that a plaintiff resident abroad will be ordered to give security for costs; the power to make such order is entirely discretionary under rule 1 (1), *supra* (see *Aeronave S.P.A.* v. *Westland Charters Ltd* [1971] 1 W.L.R. 1445; [1971] 3 All E.R. 531, C.A. and reversing *Crosat* v. *Brogden* [1894] 2 Q B. 30; *Re Pretoria Pietersburg Ry* (No. 2) [1904] 2 Ch. 359). On the other hand, as a matter of discretion, it is the usual ordinary or general rule of practice of the Court to require the foreign plaintiff to give security for costs,

**23/1–3/3**

[ 391 ]

**O. 23, rr. 1–3]**

RULES OF THE SUPREME COURT

because it is ordinarily just to do, and this is so, even though by the contract between the parties, the foreign plaintiff is required to bring the action in England (*Aeronave S P.A* v. *Westland Charters Ltd.*, (*supra*)). There is, moreover, no rule or practice that a plaintiff resident abroad suing on a dishonoured bill of exchange should not be ordered to give security (*Banque du Rhone S A.* v *Fuerst Day Lawson Ltd.*, [1968] 2 Lloyd's Rep 153, C.A.).

Where the sole plaintiff or all the plaintiffs are resident abroad security may be ordered (*Republic of Costa Rica* v. *Erlanger* (1876), 3 Ch. D. 62), and there is no rule that the Court will not grant more than two applications for security (*Merton* v. *The Times Publishing Co.* (1931), 48 T. L. R. 34). No order will be made if there are co-plaintiffs resident in England (*Winthorp* v *Royal Exchange Assurance Co* (1755), 1 Dick. 282; *D'Hormusgee* v *Grey* (1882), 10 Q B. D. 13); but they must be genuine co-plaintiffs and not merely the English attorney joined to avoid giving security (*Jones* v. *Gurney*, [1913] W N 72) So, where plaintiff goes to reside permanently abroad after institution of the suit, security may be ordered (*Green* v *Charnock* (1791), 1 Ves. jun 396; *Massey* v. *Allen* (1879), 12 Ch. D. 807).

A plaintiff who is abroad in an official capacity on the public service will not be required to give security (*Colebrook* v. *Jones* (1751), 1 Dick. 154; *Evelyn* v. *Chippendale* (1839), 9 Sim. 497; and *Nugent* v *Harcourt* (1834), 2 Dowl. P C. 578). But a peer of the realm, though privileged from arrest, must, if resident abroad, give security Lord *Aldborough* v. *Burton* (1834), 2 M. & K 401).

A foreign claimant in an English arbitration who is ordinarily resident out of the jurisdiction is within Rule 1 (1), *supra*, and may be ordered to give security for the respondent's costs in the arbitration (*Hudson Strumpffabrik G.m.b H.* v. *Bentley Engineering Co. Ltd.* [1962] 2 Q.B. 587; *Mavani* v. *Ralli Bros. Ltd.* [1973] 1 W.L.R. 468; [1973] 1 All E.R. 555).

A plaintiff under sentence of deportation may be ordered to give security (*Seilas* v. *Hanson* (1800), 5 Ves. 261); but not if merely imprisoned (*Baddeley* v. *Harding* (1821), 6 Mad. 214).

**23/1–3/4**    **Foreign Plaintiff with Property in England.**—Security will not be required from a person permanently residing out of the jurisdiction, if he has substantial property, whether real or personal, within it (*Redondo* v. *Chaytor* (1879), 4 Q. B. D., p. 457; *Hamburgher* v. *Poetting* (1882), 47 L. T. 249; *Clarke* v. *Barber* (1890), 6 T. L. R. 255; *Redfern* v. *R.* (1890), 63 L. T. 780); and the same rule applies to a foreign company (*Re Appollinaris Co.'s Trade Marks*, [1891] 1 Ch. 1); but, *semble*, the property must be of a fixed and permanent nature, which can certainly be available for costs (*Ebrard* v. *Gassier* (1884), 28 Ch. D. 232); or at any rate such as common sense would consider to be so (*Re Apollinaris Co.'s Trade Marks*, *supra*); and such person must show that it is so available (*Sacker* v. *Bessler & Co.* (1887), 4 T. L. R. 17). Where the subject-matter of an action for breach of warranty was a Greek statue, it being alleged that the statue was spurious, application was made that the plaintiff should give security for costs. The Court had already made an order that the statue, which was deposited within the jurisdiction, should not be removed without the consent of the defendants or an order of Court. Held that as in the event of the plaintiff being unsuccessful in the action the value of the statue must be more than any order for costs that could be made against him, there ought to be no order for security (*Kevorkian* v. *Burney*, [1937] 4 All E. R. 468).

Where the plaintiffs were a foreign corporation having their head office in Amsterdam and a foreign agency in London, an order was made for security for costs, the property of the company within the jurisdiction not being of a sufficiently fixed and permanent character (*Bustenlandsche Bankvereeniging* v. *Marconi's Wireless Telegraph Co* , *Ltd.* (not reported), Bigham, J., at Chambers, January 15, 1908).

**23/1–3/5**    **Plaintiff Resident in Scotland and Northern Ireland.**—Where the plaintiff resides in Scotland or Northern Ireland, security for costs will not be required from him, for by the combined effect of the Judgments Extension Act, 1868, and J A., 1873, s. 76, a judgment in any division of the High Court is enforceable in Scotland or Ireland (*Raeburn* v. *Andrews* (1874), L. R. 9 Q. B. 118; *Re Howe Machine Co.* (1889), 41 Ch. D. 118).

**Plaintiff Resident Abroad (other than in Scotland or N. Ireland).**—On the other hand, the procedure for enforcing judgments under Part II of the Ad. of J. Act, 1920, and the Foreign Judgments (Reciprocal Enforcement) Act, 1933, is different and the plaintiffs residing in countries to which those Acts apply must give security (*Kohn* v. *Rindon & Stafford* (Brod.), Ltd., [1948] 1 K. B. 327). See also O. 71, r. 4, *infra*. By the joint operation of the Government of Ireland Act, 1920, and the Irish Free State (Consequential Provisions) Act, 1922, Eire is within the rule which requires security (*Wakely* v. *Triumph Cycle Co.*, [1924] 1 K. B. 214,

[ 392 ]

SECURITY FOR COSTS

followed in *Banfield* v. *Chester*, [1925] W. N. 167, but not followed in Eire (see *Graves* v. *O'Connor*, [1924] 2 Ir. R. 182)). This is also the case with regard to appeals (*Findlay* v. *Wickham*, [1920] W. N. 317, following *Raeburn* v. *Andrews* (1874), L. R. 9 Q. B. 118).

**Quasi-Plaintiff Resident Abroad.**—Rule 1 (3) has the effect of equating a defendant who is in the position of a plaintiff with that of a plaintiff for the purposes of security for costs. In each case the Court must have regard to the substantial and not the nominal position of the parties, in order to see whether the defendant "is in the position of plaintiff in the proceeding in question" (see, *e.g.*, position of claimants in an interpleader issue, *Tomlinson* v. *Land Finance Corporation* (1884), 14 Q. B. D. 539, and *Tudor Furnishers, Ltd.* v. *Montague & Co. and Another*, [1950] Ch. 113.   **23/1-3/6**

Where a party to an interpleader issue (not a sheriff's) though nominally a defendant is really a plaintiff he cannot compel the nominal plaintiff, a foreigner resident abroad, to give security (*Belmonte* v. *Aynard* (1879), 4 C. P. D. 352). So a foreigner who launches a motion in an action on the basis that he has enforceable rights against the parties must give security for the costs of his motion (*Apollinaris Co.* v. *Wilson* (1886), 31 Ch. D. 632). Where a foreign company applied to be added as respondents to a motion to expunge a foreign trade mark, it was held that they were entitled to be so added without giving security for costs (*Re La Société Anonyme des Verreries de L'Etoile*, [1893] W. N. 119), so where adverse foreign claimants to a debt claimed by the plaintiffs obtained leave to defend and resist the plaintiffs it was right to refuse to order them to give security for costs (*Fondsenbeast* v. *Shell Transport Co.*, [1923] 2 K B. 166, C. A.). Where on a petition for revocation of letters patent notice was given to a person resident abroad, who submitted to the jurisdiction and issued a summons asking for certain directions, it was held that he was not in the position of a plaintiff coming to the Court to assert his rights and ought not to be ordered to give security (*Re Miller's Patent* (1894), 70 L. T. 270), but a defendant foreigner given conduct of cause after decree may be ordered to give security (*Mynn* v. *Hart* (1845), 9 Jur. 860). And an applicant for an order to compel an arbitrator to state a case is a quasi-plaintiff and must give security for the costs of the application even though he be a sovereign (*Re Duff and Kelantan Arbitration* (1926), 41 T. L. R. 375).

A claimant in a winding up, whether voluntary or under supervision of the Court, who is resident abroad, may be required to give security (*Re Pretoria Pietersberg Ry.*, [1904] 2 Ch. 359). *Aliter* if resident in Scotland or Northern Ireland, orders made in winding up being enforceable there (Companies Act, 1948, s. 276).

**Counterclaiming Defendant Resident Abroad.**—The mere making of a counterclaim does not put the defendant in the position of plaintiff under rule 1 (3); the question is whether, in the particular case, the counterclaim is a cross-action or operates on a defence.   **23/1-3/7**

Where a claim and counterclaim arise out of different matters, so that the counterclaim is really in the nature of a cross-action, the defendant, if resident out of the jurisdiction, may be ordered to give security (*Sykes* v. *Sacerdoti* (1885), 15 Q. B. D. 423; and see *Lake* v. *Haseltine* (1885), 55 L. J. Q. B. 205; *The Julie Fisher* (1877), 2 P. D. 115; *The Newbattle* (1885), 10 P. D. 33, where he was a foreign sovereign); but where the counterclaim arises out of the same matter, and is in fact the defence to the action, the Court will ordinarily refuse to order the defendant, resident out of the jurisdiction, to give security for costs (*Neck* v. *Taylor*, [1893] 1 Q. B. 560). In *Mapleson* v. *Masini* (1879), 5 Q. B. D. 144, where a plaintiff sued for breach of contract, and the defendant, a foreigner resident abroad, counterclaimed in respect of breaches of the same contract, it was held the defendant could not be compelled to give security. But each case must be judged on its own merits, and security for costs of a cross-action may be ordered where the claims therein set up are quite independent of the matters in question in the original action (*New Fenix, etc., Co.* v. *General Accident, etc., Corpn.*, [1911] 2 K. B. 619). As to security for damages in the Admiralty Court, see *The James Westoll* [1905] P 47, C A.  As to changing proceedings in collusion actions until security given, see O. 75, r 27, *infra*.

**Nominal Plaintiff.**—Rule 1 (1) (b), *supra*, which empowers the Court to order a nominal plaintiff who may be unable to pay the costs of the defendant to give security for costs, embodies the previous law. See judgment of Bowen, L. J., in *Cowell* v. *Taylor* (1885), 31 Ch. D. p. 38. A trustee in bankruptcy suing as such is not a nominal plaintiff (*ibid.*). The trustee of a bankrupt plaintiff is not a necessary party to proceedings relating to matters which occurred after the bankruptcy, and in such case the bankrupt will not be treated as a nominal plaintiff, nor ordered to give security for costs (*Buchan* v *Hill*, [1888] W. N. 233; *Cook* v. *Whellock* (1890), 24 Q B D. 658); nor in an action for his personal earnings (*Affleck* v *Hammond*   **23/1-3/8**

[ 393 ]

**O. 23, rr. 1–3]**

RULES OF THE SUPREME COURT

[1912] 3 K. B. 162, C. A.  See, too, *The Lake Megantic* (1877), 36 L. T. 183, *Corporation of Hastings* v. *Ivall* (1874), L. R. 9 Ch. 758).  A plaintiff who has assigned the benefit of the action may be a "nominal plaintiff" (*Semler* v. *Murphy*, [1968] Ch 183; [1967] 2 W.L.R. 1171).  So, an insolvent plaintiff who assigns to a trustee for the benefit of his creditors all his estate, and covenants to prosecute the action, is merely a nominal plaintiff, and must give security (*Lloyd* v *Hathern Station Brick Co.* (1901), 85 L. T 158, which seems to negative the earlier case of *Hinds* v. *Haskens* (1884), 1 T. L. R. 94).  And an insolvent plaintiff, who sues as trustee of a deed executed by a debtor for the benefit of his creditors, and who is not beneficially interested in the subject-matter, must give security (*Greener* v. *Kahn & Co.*, [1906] 2 K. B. 374).  *Aliter*, in the case of trustees of a separation deed (*White* v. *Butt*, [1909] 1 K. B. 50, C. A.).  But a person clothed with a representative capacity by a Court of competent jurisdiction, *e.g.*, an administrator, will not be ordered to give security for costs of an action brought by him though merely a nominee of a person resident abroad (*Rainbow* v. *Kittoe*, [1916] 1 Ch. 313).

A bankrupt, to whom the trustee in bankruptcy has assigned the right to claim damages for negligence against his former accountants, who undertook to receive only 65 per cent. of the net proceeds of the action and to pay to the trustee the remaining 35 per cent. is not a "nominal" plaintiff against whom an order for security for costs would be made and in any event as a matter of discretion on the ground that the negligence of the defendants had itself led to or contributed to his bankruptcy it would be manifestly unjust to order the plaintiff to give security for costs (*Ramsey* v. *Hartley* [1977] 1 W L R 686, [1977] 2 All E R. 673, C A )

**Next Friend.**—The next friend of a person under a disability is not a nominal plaintiff and he cannot be compelled to give security (*Fellows* v. *Barrett* (1836), 1 Keen 119); although impecunious and a stranger (*Jones* v. *Evans* (1886), 31 S. J. 11, cf. *Duhuhsrm* v. *London, etc.*, [1900] 2 Ch. 15); but if he appeals and is insolvent he may have to give security.  This applies to appeals from the county court (*Swain* v. *Follows* (1887), 18 Q. B. D., p. 587; *Wilcox* v. *Wallis Crown Cork, etc., Co., Ltd.*, [1914] W. N. 107, decisions when appeal was to Div. Ct.).  If the next friend of an infant is ordered to give security for costs and does not do so and the action is dismissed, proceedings in another action by another next friend, but against the same defendant for the same purpose, will not be stayed (*per* Cotton L.J., *Re Payne* (1883), 23 Ch. D. 288, 289, C. A.).

**23/1–3/9**  **Misdescription of Plaintiff's Residence.**—Rule 1 (1) (*c*), *supra*, which empowers the Court to order a plaintiff whose address is not stated in the writ or other originating process or is incorrectly stated there to give security for costs, embodies the previous law. See *Swansy* v. *S.* (1858), 27 L J. Ch. 419; *Redondo* v. *Chaytor* (1879), 4 Q. B. D. 453, *per* Baggallay, L.J., at p. 458; *Re Sturgis (British) Motor Power Syndicate* (1885), 53 L. T. 715; and *per* Scrutton, L.J., in *Knight* v. *Ponsonby*, [1925] 1 K. B. 545 at p. 552.

If, however, the plaintiff fails to state his address or he mis-states his address innocently and without intention to deceive, he will not be ordered to give security for costs (see *Knight* v. *Ponsonby*, *supra*, and *Chellew* v *Brown*, [1923] 2 K. B. 844, C. A., where a master mariner with no permanent home gave his sister's address).

An American company suing under an English address, at which it could not be found, was ordered to give security for costs (*Pittsburgh Crushed Steel Co.* v. *Jacob Marz & Co.*, [1897] W. N 36).

**Change of Address by plaintiff.**—Rule 1 (1) (*d*), *supra*, which empowers the Court to order a plaintiff who has changed his address during the course of the proceedings with a view to evading the consequences of the litigation to give security for costs, embodies the previous law (see *Knight* v *Ponsonby*, *supra*), but security will not be ordered from a plaintiff who has indorsed a sufficient address on his writ, and has afterwards removed from that address, and is prevented by poverty and adversity from acquiring a fresh permanent address (*ibid.*).

**23/1–3/10**  **Insolvency or Poverty no ground for Security.**—The insolvency or poverty of a plaintiff is no ground for requiring him to give security for costs (*Cowell* v. *Taylor* (1885), 31 Ch  D. 34, and cases there cited; *Le Mesurier* v. *Ferguson* (1903), 20 T. L. R. 32); even though he is an undischarged bankrupt (*Cook* v. *Whellock* (1890), 24 Q. B. D. 658); nor is possible or probable bankruptcy any ground (*Rhodes* v *Dawson* (1886), 16 Q. B. D 548).  The same rule applies in divorce cases (*Blackett* v. *B.*, [1902] P. 170)  The fact that a corporation is insolvent, and that a receiver of the profits of its undertaking has been appointed, is no ground for requiring it to give security (*Dartmouth Harbour Commissioners* v. *Mayor of Dartmouth* (1886), 55 L. J. Q. B. 483).  The next friend of an infant cannot on the mere ground of poverty

**[O. 23, rr. 1-3**

SECURITY FOR COSTS

be compelled to give security (*Fellows* v. *Barrett* (1836), 1 Keen 119); but see *Wilcox* v *Wallis, etc , Co., Ltd*, [1914] W. N. 107; *Masling* v. *Motor Hiring, etc.,* Ltd., [1919] 2 K B. 538, C. A. The fact that a plaintiff is a defaulter on the Stock Exchange is not a sufficient reason for ordering security for costs, though the official assignee alone would benefit (*Hinde* v *Haskew* (1884), 1 T. L. R 94).

The fact of a trustee in bankruptcy suing in his official name is no ground for ordering him to give security for costs (*Pooley's Trustee* v. *Whetham* (1884), 28 Ch. D. 38); nor is his insolvency a sufficient ground (*Denston* v *Ashton* (1869), L. R. 4 Q. B. 590; *Cowell* v. *Taylor* (1885), 31 Ch. D. 34).

There are, however, certain exceptions to the rule that insolvency or poverty is no ground for requiring security for costs, *e.g.*, in case of an appellant (see O. 59, r. 10 (5) (n.) " Security for the costs of an appeal "), and of a nominal plaintiff (see (n.) " Nominal Plaintiff ", *supra*).

**Plaintiff with no visible means suing in tort.**—Section 46 of the County Courts Act 1959, which conferred power to order security in such event has been repealed (see Ad of J. Act 1969, s. 11 (2) ).

23/1-3/11

**Plaintiff a Limited Company.**—Section 447 of the Companies Act, 1948, provides: " Where a limited company is plaintiff or pursuer in any action or other legal proceeding, any judge having jurisdiction in the action may, if it appears by credible testimony that there is reason to believe that the company will be unable to pay the costs of the defendant if successful in his defence, require sufficient security to be given for those costs, and may stay all proceedings until the security is given."

23/1-3/12

The fact that a company is in liquidation is *prima facie* evidence that it is unable to pay the costs, unless evidence to the contrary is given (*Northampton Coal, Iron & Waggon Co.* v. *Midland Waggon Co.* (1878), 7 Ch. D. 500, C. A.; *Pure Spirit Co.* v. *Fowler* (1890), 25 Q. B. D. 235). Apart from such a case, the application for security must be supported by an affidavit which credibly and reasonably shows the inability of the company to pay the costs of the successful defendant. Thus, security was ordered where a banking company in voluntary liquidation had before bringing the action sold its business to another bank (*National Bank of Wales* v. *Atkins* (1894), 38 S. J. 186), where a small company was suing for an infringement of patent which was its substratum (*Diamond Steel Manufacturing Co.* v. *Harrison* (1910), 27 R. P. C. 451). But the mere fact that a company has issued a debenture charging all its assets to secure the repayment of all moneys then or at any time owing to a particular person was not considered to be a sufficient reason for ordering security (*Universal Aircraft, Ltd.* v. *Hickey*, May 4, 1948, Morton, J. (unrep.)).

The section applies after transfer to the County Court (*Plaswood Collieries Co , Ltd.* v. *Partridge* (1911), 104 L. T. 807).

The section does not apply to a liquidator taking out a misfeasance summons, and a liquidator will not be ordered on the ground of poverty to give security for costs of a misfeasance summons under section 333 of the Companies Act, 1948 (*Re Strand Wood Co.*, [1904] 2 Ch. 1, C. A.).

" Sufficient security " within the above section ought not to be either illusory or oppressive (*Dominion Brewery* v. *Foster* (1897), 77 L. T. 507; *Imperial Bank of China and Japan* v. *Bank of Hindustan* (1866), L. R. 1 Ch. 437). It should be for the probable amount of costs taking into account the chance of the case collapsing, but of course the amount of security is in the discretion of the Court.

The Court has a discretion under section 447 of the Companies Act 1948, just as under Rule 1, whether to order security for costs having regard to all the circumstances of the case (*Sir Lindsay Parkinson & Co. Ltd.* v *Triplan Ltd* [1973] Q B. 609; [1973] 2 W.L.R. 632; [1973] 2 All E R. 273, C.A.) Among the circumstances which the Court might take into account are the following, (1) whether the plaintiff's claim is bona fide and not a sham; (2) whether the plaintiff has a reasonably good prospect of success; (3) whether there is an admission by the defendants on the pleadings or elsewhere that money is due; (4) whether there is a substantial payment into Court or an " open offer " of a substantial amount; (5) whether the application for security was being used oppressively, *e g.* so as to stifle a genuine claim, (6) whether the plaintiff's want of means has been brought about by any conduct by the defendants, such as delay in payment or in doing their part of the work; (7) whether the application for security is made at a late stage of the proceedings (*ibid.*, *per* Lord Denning M.R.). The Court may order a plaintiff company in liquidation to give security for costs, even though it is one of two or more plaintiffs, especially where there is a comparatively small overlap between its own claims and those of the other plaintiffs (*John Bishop (Caterers) Ltd* v. *National Union Bank Ltd* [1973] 1 All E R 707, (1973) 117 S J 36) In the case of a limited company s 447 applies to all companies irrespective of whether or not it happens to be suing as plaintiff with a natural person as co-plaintiff, and the inability of the plaintiff

**O. 23, rr. 1-3]**

RULES OF THE SUPREME COURT

company to pay the defendants' costs is a substantial factor in the Court's decision whether to order security for costs, and while the court must not allow s 447 to be used as an instrument of oppression, it must equally not allow an impecunious company to put unfair pressure on a prosperous company (*Pearson* v. *Naydler* [1977] 1 W.L R 899, [1977] 3 All E R 531)

As to security for costs on an appeal by a company against a winding-up order, see *Re Photographic Artists' Co-operative Supply Association* (1883), 23 Ch. D. 370, C. A.

Security may be ordered if the plaintiff company goes into liquidation after the trial has actually commenced (*Lydney and Wigpool Iron Co.* v. *Bird* (1883), 23 Ch. D. 358).

**23/1–3/13**   **Defendant a Limited Company.**—Where a company is defending itself, it must be regarded as, in substance, a defendant, and, therefore, is not to be called upon to give security (*Accidental and Marine Insurance Co.* v. *Mercati* (1866), L. R. 3 Eq. 200), but if it takes proceedings which go beyond merely defensive proceedings it may be required to give security (*Washoe Mining Co.* v. *Ferguson* (1866), L. R. 2 Eq. 371; *New Fenix Compagnie Anonyme d'Assurances de Madrid* v. *General Accident, Fire and Life Assurance Corporation, Limited*, [1911] 2 K. B 619, C. A. (cross-action by foreign company); *City of Moscow Gas Co.* v. *International Financial Society* (1872), 7 Ch. App. 225; *Pure Spirit Co.* v. *Fowler* (1890), 25 Q. B. D. 235, and see *Freehold Land Co.* v. *Spargo*, [1868] W. N. 94), and so in the case of a counterclaim security may be ordered (*Strong* v. *Carlyle Press* (No. 2), [1893] W. N. 51).

**23/1–3/14**   **No Security for Costs against Defendant.**—Security for costs cannot be required from a defendant who is exercising his right to defend himself against attack, though resident out of the jurisdiction (*Naamlooze, etc.* v. *Bank of England* [1948] 1 All E.R. 465, C.A.), nor from a person seeking to intervene as defendant (*Maatschappij Voor Fondsenbesit* v. *Shell Transport and Trading Co.* [1923] 2 K B. 166, C.A.), nor from a defendant sued on a dishonoured bill who raises a defence under the Bills of Exchange Act, 1882 (*Banque du Rhone S.A.* v. *Fuerst Day Lawson Ltd.* [1968] 2 Lloyd's Rep. 153, C.A.), nor from a person who is compelled to litigate or to take proceedings which are merely defensive, *e g*, by filing a bill to restrain an action at law (*Watteen* v. *Billam* (1841), 3 D. G. & Sm. 516, *aliter* from an applicant for an order compelling an arbitrator to state a case; *Re Duff and Kelantan Arbitration* (1925), 41 T. L. R. 375); nor from a shareholder of a company who resides out of the jurisdiction and appears to oppose a winding-up petition (*Re Percy, etc., Iron Mining Co.* (1876), 2 Ch. D. 531), and see *Re Barber* (1886), 55 L J. Ch. 624; *Accidental & Marine Insurance Co* v. *Mercati* (1866), L. R. 3 Eq. 200. Security for costs cannot be required from a defendant who raises the issue of domicile as part of his defence, even though he is made the plaintiff on the trial of a preliminary issue (*Vusco* v. *Minter* [1969] P. 82; [1969] 3 W.L R. 70) Co-defendants in a cross-action who were not parties to the original action may obtain security for the costs of the cross-suit (*Sloggett* v *Viant* (1842) 13 Sim 187; *Washoe Mining Co.* v *Ferguson* (1866) L.R. 2 Eq 371) But a defendant setting up a counterclaim may be required to give security, see (nn.) "Counter-claiming Defendant Resident Abroad " and " Defendant a Limited Company ", *supra*. In *La Compagnie Générale, etc* , [1891] 3 Ch., p 458, an application for rectification of the register of trademarks, where both parties were out of the jurisdiction, security was ordered to be given by both.

On the other hand, security will not be required against the defendant in the substantive proceedings in respect of any interlocutory application made by him by summons or motion (*In Re B. (Infants)*, [1965] 1 W. L. R. 643; [1965] 2 All E.R. 651n.).

**23/1–3/15**   **Security for Wife's Costs.**—The practice of the Family Division as to ordering a husband to give security for the wife's costs of a divorce suit is not affected by the decision in *Re Wingfield & Blew* [1904] 2 Ch 665, C.A ; and therefore a wife who has obtained a separation order under the Summary Jurisdiction Act 1895 (repealed and replaced by the Matrimonial Proceedings (Magistrates' Courts) Act 1960), and subsequently takes proceedings for a divorce, is entitled to security for her costs of such proceedings (*Sheppard* v *S* [1905] P 185). In one case Lord Merrivale P , modified the rigour of the order by not directing that there should be a payment into Court (*S.* v. *S and P.* (1928) 44 T.L.R 52) A wife can apply for security for costs in the case of an act on petition filed by the husband (*Smith* v. *Smith* [1923] P 128). A husband cannot refuse to pay or give security for a wife's costs of divorce suit or issue as to domicil merely because he disputes the jurisdiction, and a husband appearing under protest to a wife's petition and disputing the jurisdiction on the ground of foreign domicil may be ordered to pay the wife's

[ **596** ]

**[O. 23, rr. 1–3**

SECURITY FOR COSTS

costs up to the setting down of the issue, and to give security for her costs attendant on the issue, and down to close of pleadings (*Johnstone* v *J.* [1929] P 128)

A husband or wife who is resident out of the jurisdiction is not liable to give security for costs in relation to matrimonial proceedings in a County Court, M C.R. 1977, r 116, *infra*

Where the wife is an assisted person, there is no necessity for ordering security for her costs, and such an order will not ordinarily be made (*Corbett* v. *Corbett (No. 2)* [1970] 3 W.L.R. 195; [1970] 2 All E.R. 654, applying *Norris* v. *Norris* [1969] 1 W.L.R. 1264; [1969] 3 All E.R. 134, C.A., negativing *Mines* v. *Mines* [1957] 1 W.L.R. 544; [1957] 1 All E.R. 667). A petitioning husband who is an assisted person may have an order for security of his wife's costs made against him if the circumstances of the case warrant it (*Wigley* v. *Wigley* [1951] P. 156; *Vincent* v *Vincent* [1952] 2 All E.R. 978). But where the wife is also an assisted person, an order should not usually be made (*Evans* v. *Evans* [1963] 1 All E R. 70), and certainly not without proof of the husband's means beyond the mere production of the civil aid certificate (*ibid.*). Similarly, where the wife applies for security for her costs of an appeal brought by the husband, she must show she is impecunious, and the mere fact that she is an assisted person is not sufficient (*Williams* v. *Williams* [1953] 2 All E.R. 475, and *Practice Note* [1953] 1 W.L.R. 905)

Security for the costs of a wife's defence is only ordered upon the basis that the wife has a bona *fide* defence. In order that the solicitor for the wife who fails in the suit should obtain an order for her costs, there must have been reasonable grounds for defending (*Kershaw* v. *K.* (1907), 23 T. L. R. 296); but her solicitor cannot be expected to decide beforehand on the truth of the defence disclosed to him (*Franklin* v. *F and Minshall*, [1921] P. 407). The Registrar may limit the costs of an unsuccessful petitioning wife to the amount for which security has been given (*Betton Bright* v. B.B., [1920] P. 338); if more is wanted application should be made to the Judge (*ibid.* in C. A., p. 346). Subject to such costs, the money in Court is the husband's (*Butler* v. *B.* (1890), 15 P. D. 151). Unless there is money in Court, a wife whose husband dies *pendente lite* cannot apply in that suit (which has abated) for costs incurred therein (*Maconochis* v *M.*, [1916] P. 395; *Coleman* v *Coleman & Simpson*, [1920] P. 71, *Beaumont* v. *Beaumont*, [1933] P. 30)

**Security for Wife's Costs on Appeal.**—There is no authority that the C. A. should give a wife security for costs upon the same principles as in the Family Division (*Shufflebotham* v. *S.* (1923), 128 L. T. 642). And there is no rule that a husband who appeals successfully against a decree granted to his wife in the Court below must necessarily pay the costs of the appeal; the matter is in the discretion of the Court (*Kerr* v. *Kerr*, [1948] P. 297, C. A.).           **23/1–3/16**

Where both parties were without means, security for the wife's costs of the husband's appeal was ordered (*Sirrell* v. *S.*, [1911] P. 38), as also where the wife alone was without means (*L.* v. *L* (1911), 55 S. J. 330), but the practice of ordering security for the wife's costs, when the husband has been unsuccessful below, has no application to the case of a wife, unsuccessful below and appealing (*Fletcher* v *Fletcher*, [1928] P. 90).

**International Conventions affecting Security for Costs.**—The following Conventions expressly forbid any requirement of security for costs, *viz.*, Carriage of Goods by Rail (Berne) 1952, Art. 55 (4); Carriage of Passengers by Rail (Berne) 1961, Art. 56 (4); Carriage of Goods by Road (Geneva) 1956, Art. 31 (5); Carriage of Passengers by Road Convention, Art. 41 (5). It should be noted, however, that these Conventions, although ratified, have not yet been brought into force in England.

The following Conventions impliedly exclude requests for security for costs by non-discrimination clauses, *viz.*, Third Party Liability in the Field of Nuclear Energy (Paris) 1960, Art 14 (a), as amended by the additional Protocol of 1964; Civil Liability for Nuclear Damage (Vienna) 1963, Art. 13; Convention for Liability in Nuclear Ships (Brussels) 1962, Art. 12 (3) (not yet ratified)

On the other hand, the Warsaw Convention on Carriage by Air 1932, Art. 28, impliedly permits a requirement of security for costs by providing that the procedure is to be governed by the *lex fori*.

**Security for Costs of Appeal.**—See O. 59, r 10 (5) (nn.) and Magistrates' Courts (Matrimonial Proceedings) Act 1960

**Mode of Application for Security.**—Application for security for costs is made by summons at Chambers (*Vale* v. *Opport* (1874), 30 L. T. 457; *Re Härter's Trade Mark*, [1887] W. N. 71; Seton, 7th ed., 28). Where time permits a written demand for security should be made to the plaintiff's solicitor (Chitty and Jacob, Form 363). If the application is made before a summons for directions has been issued it is made by ordinary summons, or if afterwards by notice for directions. For form of summons, see PF 43, Vol. 2, Part 2, *infra*. D C. F, p. 867; Chitty and Jacob,           **23/1–3/17**

O. 23, rr. 1–3]

RULES OF THE SUPREME COURT

Form 364.  An affidavit in support is generally necessary (D C. P 1621), though not where the ground for requiring security is that the plaintiff is resident out of the jurisdiction, and the fact appears on the writ (Form of affidavit, Chitty and Jacob, Forms 365–366).

**Order for Security for Costs.**—Where the Master orders security for costs to be given, he will fix the amount and direct the mode in which and the time within which such security should be given, and the order will usually provide that proceedings shall be stayed until such security is given. In a proper case, the Master may dispense with such a stay. It is also convenient to provide in the order the stage of the proceedings up to which the security has been awarded and, if necessary, to give liberty to apply for further security  See PF 44, Vol 2, Part 2, *infra*, Chitty and Jacob, Form 367.

Where the order contained the usual stay of proceedings, and during such stay defendant prepared affidavits on a pending motion for injunction, he having given an undertaking to deliver copies of affidavits within ten days—held, that he was entitled to the costs of his affidavits (*Whiteley Exerciser, Ltd.* v. *Gamage*, [1898] 2 Ch. 405). As to the form of order now adopted in case of security for costs of appeal, see *Hope* v  *H.* (1902), 86 L. T. 363 (C A , and O 59, r. 10 (n ), *infra*).

**23/1–3/18**     **Effect of Refusal to Order Security.**—If an application for security is refused by a Master, and his decision is not appealed from, it is final.  It estops the parties from making a further application on the same facts.  *Alter*, if security is ordered. It may then be increased by subsequent order.  *Hermite* v.  *Allingham and Others*, January 13, 1936, C. A., Greer, Slesser and Scott, L JJ., unreported.

**Arbitration Proceedings.**—Except by express agreement between the parties, an arbitrator has no power to order security for costs (*Lanza* v. *Wiener*, [1917] 2 K. B. 558, but the Court has power to order security for costs in arbitration proceedings (Arbitration Act, 1950, s. 12 (6) (a); *Bilcon* v. *Fegmay Investments*, [1966] 2 Q. B. 221; [1966] 3 W. L. R. 118.

Where a foreigner residing out of the jurisdiction applied for the appointment of an arbitrator under Arbitration Act, 1889, s. 5 (now Arbitration Act, 1950, s. 10), the Court made the giving of security for costs a condition of assisting him (*Bjornstad* v. *Ouse Shipbuilding Co.*, [1924] 2 K. B. 673, C. A.).

**Miscellaneous Proceedings.**—The Prize Court Rules, 1939, O 18, treat all claimants as plaintiffs; but in ordering security the Judge must not increase the difficulty of enforcing *bona fide* rights: he may consider the type of case which usually proves fraudulent, but must remember that costs are not usually ordered against a *bona fide* claimant, though he may fail (*The Stanton, Cargo ex*, [1917] A  C. 380).

The claimant in condemnation proceedings instituted in the High Court must give security for costs (Customs and Excise Act 1952, Sched 7, para. 10 (2) )

A caveator cannot as such be ordered to give security for costs (*In the Goods of Emery* [1923] P  184); he cannot be regarded as being in the position of a plaintiff and his position cannot be altered by the election of a beneficiary under the will to be joined as a co-defendant (*Rose* v. *Epstein* [1974] 3 All E R. 745, C A.).

A municipal election petitioner must give security for the costs of the petition (*Everett* v. *Griffiths (No. 2)*, [1923] 1 K. B. 130).

A petitioner may be required to give security for costs in the same manner as from a plaintiff (*Re Norman* (1849), 11 Beav  401), except where the petition is presented in a cause to which the petitioner is a defendant (*Cochrane* v  *Fearon* (1854), 18 Jur. 568).

A relator bringing an action at the suit of the Attorney-General may be required to give security for costs (*A.-G* v. *Allman*, [1906] 1 Ir. R  473).

Plaintiffs whose persons are privileged from arrest, such as ambassadors' servants, may be required to give security (*Goodwin* v *Archer* (1727), 2 P  W  452)  See D  C. P. 71; 10 Morg. 542; but an ambassador will not be required to give security (*Duke de Montellano* v  *Christin*, 5 M. & S  503)

When one of two partners had instituted an action expressly against his partner's wishes he was ordered to give his partner (who disclaimed any interest in the subject matter) a full and complete indemnity coupled with security against all costs, expenses, charges, and liabilities in respect thereof and the action was stayed till this was done (*Davey* v. *Alby United Carbide Factories, Ltd* , Coleridge. J . at Chambers, March 19, 1914).

**23/1–3/19**     **Bankruptcy.**—Bankruptcy is not, as such, a ground for ordering a plaintiff to give security for costs (*Rhodes* v. *Dawson* (1886), 16 Q. B. D. 548; *Cook* v. *Whellock* (1890), 24 Q. B. D  658), but an insolvent trustee under a deed of assignment must give security: *Greener* v. *Kahn & Co., Ltd.*, [1906] 2 K B. 374. Security for costs on an appeal by a creditor resident out of the jurisdiction against a rejection of his proof in bankruptcy proceedings will only be ordered in extreme cases (*Re Semenza*,

[ 898 ]

**[O. 23, rr. 1–3**

SECURITY FOR COSTS

[1894] 1 Q. B 15, C. A ; 1 Manson, 18, and see *Re Vanderhaege* (1887), 20 Q. B. D. 146). Appeals cannot be combined so as to avoid several deposits (*Re Smith*, 1 M. B. R. 30)

**Legal Aid.**—The fact that the plaintiff is an assisted person is not a sufficient reason why security should not be ordered, although (since the object of such an order is to give the defendant security against such costs as are likely to be awarded him, if successful, at the trial) the amount of security ordered may be smaller than usual. In a claim for damages for personal injuries an order for security was made against the plaintiff (an assisted person) who was ordinarily resident abroad (*Jackson v. John Dickinson & Co (Bolton) Ltd.*, [1952] W. N. 9; [1952] 1 All E. R. 104, C. A.; *Friedmann v. Austay (London) Ltd* , [1954] 1 W. L. R. 466; [1954] 1 All E. R. 594; *Williams v. Williams*, [1953] 2 All E. R. 474).

**Security by Undertaking to Pay Costs.**—Where the undertaking of a party or his solicitor to pay the whole or a specified proportion of the costs or a specified sum in lieu of security for costs is accepted by the other party, there is no need for any application to the Court.     **23/1–3/20**
Where such an undertaking is given and is accepted in lieu of security for costs, it lasts as long as there is no final judgment from which an appeal lies (*Hawkins Hill Co. v. Want* (1893), 69 L. T. 297). It will be limited to the amount of the security so given.

**Security Agreed without an Order.**—In Q. B. D., where the defendant demands security from a foreign plaintiff who is willing to give the required security for an agreed amount without any application for an order being made, the plaintiff's solicitor should obtain and fill up Pay Office Form No. 23 (Q.B.D.), and take it, duly stamped, to the Practice Master to be signed   On this authority the bank will receive the money, which should be sealed by the Summons and Order Department and produced to the Pay Office.

**Security by Payment into Court.**—The more usual and convenient mode in which to order security for costs is to require a specified sum to be paid into Court within a specified period. This mode saves a great deal of costs and trouble, as compared with requiring security by bond, and is much to be preferred.
The Court cannot order a solicitor, to whom, on the dismissal of an action with costs, money paid into Court by plaintiff as security for costs of defendant, has been paid out in part payment of defendant's costs as agent for the defendant, to refund such money on the subsequent reversal of the order for dismissal (*Lydney, etc., Co. v Bird* (1886), 33 Ch D. 85). See *Hood-Barrs v. Crossman*, [1897] A. C. 172: *Re Griffiths Cycle Corporation* (1902), 85 L. T. 776, C. A.
Where a party has been compelled to pay money into Court as security for costs such fund cannot be looked upon as property recovered or preserved, so as to enable the Court to give the solicitor of the party paying in a charging order upon it for the amount of his costs (*Re Wadsworth* (1885), 29 Ch D 517).

**Security by Bond.**—Security for costs may in special cases be ordered to be given by bond and is usually given by bond with two sureties, though one obligor is sufficient (D. C. P. 1622). For form, see D. C. F., p. 1060; Chitty and Jacob, Form 368. The bond has usually to be approved by the Master, but is given *to* the person requiring the security.     **23/1–3/21**
The proposed sureties on the bond must be solvent (*Cliffe v. Wilkinson* (1830), 4 Sim 122), and the plaintiff's solicitor cannot be surety (*Panton v Labertouche* (1843), 1 Ph 265, where the reason is stated), nor is the solicitor's undertaking sufficient (*Re Norman* (1849) 11 Beav 401). If the surety becomes bankrupt, the plaintiff must find a new one, and proceedings may be stayed in the meantime (*Lautour v Holcombe* (1843), 1 Ph 262; *Veitch v Irving* (1840), 11 Sim 122)   Where there are several defendants separately represented, each may have a separate security, though only one penalty is recoverable (*Lowndes v. Robertson* (1819), 4 Mad. 465)
Security may be given by the bond of a Guarantee Society, which is made out to the party entitled to the security and is lodged with their solicitors
There is no general rule that the bond of a foreign company will not be accepted as security (*Aldrich v. Griffin, etc , Co.* [1904] K B 850, C A)

**Time for Making Application for Security.**—The right to security is not waived by service of the defence, and an order for security may be made at any stage of the proceedings (*Re Smith* (1896), 75 L. T. 46, C. A.; and see *Arkwright v. Newbold*, [1880] W. N. 59; *Martano v. Mann* (1880), 14 Ch. D. 419, C. A.; *Lydney, etc. Iron Ore Co. v. Bird* (1883), 23 Ch. D. 358).
An application for security may be made after judgment for the costs of further

[ 899 ]

proceedings directed by the judgment as, *e.g*, the taking of an account before an Official Referee (*Brown* v. *Haig*, [1905] 2 Ch. 379).

**23/1–3/22**  **Amount of Security.**—The amount of security awarded is in the discretion of the Court, which will fix such sum as it thinks just, having regard to all the circumstances of the case. It is not the practice to order security on a full indemnity basis. The more conventional approach is to fix the sum at about two-thirds of the estimated party and party costs up to the stage of the proceedings for which security is ordered; but there is no hard-and-fast rule. It is a great convenience to the Court to be informed what are the estimated costs, and for this purpose a skeleton bill of costs usually affords a ready guide (cited with approval by Geoffrey Lane J. in *T. Sloyan & Sons (Builders) Ltd* v. *Brothers of Christian Instruction* [1974] 3 All E.R. 715, 720).

Where the claim of the plaintiff, who may be required to give security for costs, whether under r. 1, *supra* or under the Companies Act 1948, s. 447, is countered by a cross-claim put forward by the defendant, the amount by which such cross-claim exceeds the plaintiff's claim has to be treated as a counter-claim in relation to which the plaintiff is in the position of a defendant and in respect of which therefore he cannot be ordered to give security for costs, and accordingly, in such case the appropriate amount of security must be determined by having regard to the fact that the defence goes to the whole of the plaintiff's claim while disregarding the excess of the defendant's claim over the plaintiff's claim (*T. Sloyan & Sons (Builders) Ltd.* v. *Brothers of Christian Instruction* [1974] 3 All E.R. 715).

Security for costs is not necessarily confined to future costs, but may, when applied for promptly, be extended to costs already incurred in the suit (*Brocklebank* v. *King's Lynn Steamship Co.* (1878), 3 C. P. D. 365); and see also *Massey* v. *Allen* (1879), 12 Ch. D. 807.

The amount of security awarded may be increased, see *Sturla* v. *Freccia*, [1877] W. N. 166, 188; [1878] W. N. 161; *Republic of Costa Rica* v. *Erlanger* (1876), 3 Ch. D. 62; *Northampton Coal, etc., Co.* v. *Midland Waggon Co.* (1878), 7 Ch. D. 500; *Massey* v. *Allen* (1879), 12 Ch. D. 807; and in *Re Feld's Will Trusts, Feld* v. *Feld, Law Journal,* Vol. CX, p. 3, where the defendants sought security for costs as the costs likely to be incurred were increased, Wynn-Parry, J., directed that an additional amount to that already in the defendants' hands be lodged in Court.

There is no rule that the Court will not grant more than two applications for security (*Merton* v. *The Times Publishing Co.* (1931), 48 T. L. R. 34). In that case, however, the Court made a final order of £1,000, but without prejudice to a further application for a commission.

**23/1–3/23**  **Default in Giving Security.**—If the plaintiff makes default in giving security he may be ordered to give security within a limited time, and in default the action may be dismissed (*Giddings* v. *G.* (1847), 10 Beav. 29; and see *La Grange* v. *McAndrew* (1879), 4 Q. B. D. 210, where action was dismissed after order for security and stay of proceedings meantime). In *Burton* v. *Holdsworth*, [1951] 2 K. B. 703; [1951] 2 All E. R. 381, C. A., an order for remission to the county court was made (against an assisted person) in default of payment for security of costs into Court.

**Return of Security.**—A plaintiff against whom an order for security had been made on account of his residence out of the jurisdiction was in Chancery allowed to get the order discharged at his own expense on coming to reside within the jurisdiction (*Mathews* v. *Chichester* (1861), 30 Beav. 135), but at common law the case was otherwise (*Badnall* v. *Haylay* (1838), 4 M. & W. 535); at any rate where security had actually been given, though not otherwise (*Place* v. *Campbell* (1848), 6 D. & L. 113). In *Tottenham* v. *Cees* (April 15, 1918, unreported), Astbury, J., at Chambers adopted the common law practice and declined to order payment out of the deposit to a plaintiff who had returned from abroad. The order being good when made must stand in spite of subsequent circumstances (*Westenberg* v. *Mortimore* (1875), L. R. 10 C. P. 438).

**Payment out.**—Successful plaintiffs are entitled to have money paid in by them as security for costs paid out to them notwithstanding a stay of execution pending appeal (*The Barnase*, [1930] P. 1; *Comitato Portuario, etc.* v. *Instone*, [1922] W. N. 260 C. A.).

Exhibit "D"

(Ch 35)

# THE RULES OF THE SUPREME COURT 1978

In exercise of the powers conferred by section 41 of the Supreme Court Act, the Rules Committee makes the following Rules —

### PRELIMINARY

### ORDER 1
### ( R.S.C. 1978)

### CITATION AND COMMENCEMENT, APPLICATION, INTERPRETATION AND FORMS



# EXTRAORDINARY

# OFFICIAL GAZETTE

# BAHAMAS

## PUBLISHED BY AUTHORITY

| NASSAU | 5th July, 1978 |
|---|---|



EXHIBIT

D

**OFFICIAL GAZETTE**

"costs' includes fees, charges, disbursements, expenses and remuneration;

"the Court" means the Supreme Court or any one or more judges thereof, whether sitting in court or in chambers, or the Registrar;

"taxed costs" means costs taxed in accordance with this Order;

"taxing master" means the Registrar.

(2)   In this Order references to a fund, being a fund out of which costs are to be paid or which is held by a trustee or personal representative, including any references to any estate or property, whether real or personal, held for the benefit of any person or class of persons; and references to a fund held by a trustee or personal representative include references to any fund to which he is entitled (whether alone or together with any other person) in that capacity, whether the fund is for the time being in his possession or not.

**Application (O.59, r.2).**

2.—(1)   Where by virtue of any Act the costs of or incidental to any proceedings before an arbitrator or umpire or before a tribunal or other body constituted by or under any Act, not being proceedings in the Supreme Court, are taxable in the Supreme Court, the following provisions of this Order, that is to say, rule 7, (4) and (5), rule 8(5) rules 13 and 14, rule 15(1), rule 16, rule 19 (except paragraph 3), rules 20 and 24 and rules 31 and 33, shall have effect in relation to proceedings for taxation of those costs  as they have effect in relation to proceedings for taxation of those costs of or arising out of proceedings in the Supreme Court.

(2)   The costs of and incidental to proceedings in the Supreme Court shall be in the discretion of the Court and  that Court shall have full power to determine by whom and to what extent the costs are to be paid, and such powers and discretion shall be exercised subject to and in accordance with this Order.

---

## ENTITLEMENT TO COSTS

**When costs to follow the event (O.59. r.3).**

3.—(1)   Subject to the following provisions of this Order, no party shall be entitled to recover any costs of or incidental to

any proceedings from any other party to the proceedings except under an order of the Court.

(2)  If the Court in the exercise of its discretion sees fit to make any order as to the costs of or incidental to any proceedings, the Court shall, subject to this Order, order the costs to follow the event, except when it appears to the Court that in the circumstances of the case some other order should be made as to the whole or any part of the costs.

(3)  The costs of and occasioned by any amendment made without leave in the writ of summons or any pleading shall be borne by the party making the amendment, unless the Court otherwise orders.

(4)  The costs of and occasioned by any application to extend the time fixed by these rules, or any direction or order thereunder, for serving or filing any document or doing any other act (including the costs of any order made on the application) shall be borne by the party making the application, unless the Court otherwise orders.

(5)  If a party on whom a notice to admit facts is served under Order 27, rule 2, refuses or neglects to admit the facts within 7 days after the service on him of the notice or such longer time as may be allowed by the Court, the costs of proving the facts shall be paid by him, unless the Court otherwise orders.

(6)  If a party —
    (a) on whom a list of documents is served in pursuance of any provision of Order 24, or
    (b) on whom a notice to admit documents is served under Order 27, rule 5,

gives notice of non-admission of any of the document in accordance with Order 27, rule 4(2) or 5(2), as the case may be, the costs of proving that document shall be paid by him, unless the Court otherwise orders

(7)  Where a defendant by notice in writing and without leave discontinues his counterclaim against any party or withdraws any particular claim made by him therein against any party, that party shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim or his costs occasioned by the claim withdrawn, as the case may be, incurred to the time of receipt of the notice of discontinuance or withdrawal

216                    OFFICIAL GAZETTE

(8)   Where a plaintiff accepts money paid into Court by a defendant who counterclaimed against him, then, if the notice of payment given by that defendant stated that he had taken into account and satisfied the cause of action or, as the case may be, all the causes of action in respect of which he counterclaimed, that defendant shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim incurred to the time of receipt of the notice of acceptance by the plaintiff of the money paid into court.

(9)   Where any person claiming to be a creditor —

    (a)   seeks to establish his claim to a debt under any judgment or order in accordance with Order 44, or

    (b)   comes in to prove his title, debt or claim in relation to a company in pursuance of any such notice as is mentioned in the Companies Act

he shall, if his claim succeeds, be entitled to his costs incurred in establishing, it, unless the Court otherwise directs, and, if his claim or any part of it fails, may be ordered to pay the costs of any person incurred in opposing it.

(10)   Where a claimant is entitled to costs under paragraph (9), the amount of the costs shall be fixed by the Court unless it thinks fit to direct taxation and the amount fixed or allowed shall be added to the claimant's debt.

(11)   Where a claimant (other than a person claiming to be a creditor) having established a claim to be entitled under a judgment or order in accordance with Order 44 has been served with notice of the judgment or order pursuant to rule 3 or 15 of that Order, he shall, if he enters an appearance, be entitled as part of his costs of action (if allowed) to costs incurred in establishing his claim, unless the Court otherwise directs; and where such a claimant fails to establish his claim or any part of it he may be ordered to pay the costs of any person incurred in opposing it.

**Stage of proceedings at which costs to be dealt with (O.59, r.4).**

4.   Costs may be dealt with by the Court at any stage of the proceedings or after the conclusion of the proceedings; and any order of the Court for the payment of any costs may, if the Court thinks fit, require the costs to be paid forthwith notwithstanding that the proceedings have not been concluded.

Exhibit "E"

# THE
# SUPREME COURT
# PRACTICE
# 1976

VOLUME 1

PART 1

LONDON

SWEET & MAXWELL LTD.          STEVENS & SONS LTD.
11 NEW FETTER LANE, LONDON EC4P 4EE

BUTTERWORTH & CO. (PUBLISHERS) LTD.
88 KINGSWAY WC2B 6AB

EXHIBIT

E

[O. 63 rr. 2, 3]

Costs

In *Williams v. Buchanan*, 7 T. L. R. 226, C. A., the defendant was sued on his guarantee. He served his co-guarantor B with a third party notice. B appeared, delivered defence and appeared by separate counsel at trial. The plaintiff's action against defendant was dismissed. Held that B must bear his own costs. See *Thomas v. Times Book Co., Ltd.*, [1966] 1 W. L. R. 911 where plaintiff was ordered to pay the costs of the third and fourth parties.

**Costs, Indemnity as to.**—If the plaintiff succeeds against the defendant and the latter against the third party, and where the defendant is entitled to an indemnity from the third party, and has been ordered to pay the plaintiff's costs as between party and party, the defendant is entitled to judgment against the third party for the costs of the action between him and the plaintiff on the common fund basis but they will only be allowed upon that basis upon taxation provided the order or judgment so direct. The costs of the proceedings between the defendant and the third party will normally be payable as between party and party (*Simpson v. British Industries Trust*, 39 T. L. R. 286, and see Seton, p. 2072 (10), and note to *Maxwell v. British Thomson Houston Cc.* [1904] 2 K. B. 342, from which it appears that Kennedy J. had reconsidered his decision upon this point; see also *Hartas v. Scarborough*, 33 S. J., p. 661. *Born v. Turner*, infra, *The Millwall* [1905] P. 155, *Hooper v. Bromet*, supra, *Wiley v. Smith* [1894] 1 Ir. R. 153; cf. also *Shepheard v. Bray* [1906] 2 Ch. 235, [1907] 2 Ch. 571. C. A. *Pidnie v. Benckendorff* [1918] 11 R. P. C. 67. Where the defendant appeals unsuccessfully from a judgment in favour of the plaintiff, and the third party does not sanction or take part in the appeal, the third party will not in the absence of special circumstances be ordered to pay to the defendant the costs of the appeal.

**Transfer of Cause or Matter.**

Where a party, on insufficient grounds, refuses to consent to a transfer, he may be ordered to pay costs if asked for by the notice of motion for transfer (*Cocq v. Hunasqeria Coffee Co.* (1869), L. R. 4 Ch. 415; *Orrell v. Busch* (1870), L. R. 5 Ch. 467; *Lucas v. Siggers* (1872), L. R. 7 Ch. 517; and see *Lyall v. Weldhen* (1874), L. R. 9 Ch. 287); but costs of letters asking for his consent should not be allowed against him on taxation unless expressly ordered (*Norton v. Fenwick* (1885), 54 L. J. Ch. 632).

———

ENTITLEMENT TO COSTS

**When costs to follow the event** (O. 62, r. 3).

**3.**—(1) Subject to the following provisions of this Order, no party shall be entitled to recover any costs of or incidental to any proceedings from any other party to the proceedings except under an order of the Court.

(2) If the Court in the exercise of its discretion sees fit to make any order as to the costs of or incidental to any proceedings, the Court shall, subject to this Order, order the costs to follow the event, except when it appears to the Court that in the circumstances of the case some other order should be made as to the whole or any part of the costs.

(3) The costs of and occasioned by any amendment made without leave in the writ of summons or any pleading shall be borne by the party making the amendment, unless the Court otherwise orders.

(4) The costs of and occasioned by any application to extend the time fixed by these rules, or any direction or order thereunder, for serving or filing any document or doing any other act (including the costs of any order made on the application) shall be borne by the party making the application, unless the Court otherwise orders.

(5) If a party on whom a notice to admit facts is served under Order 27, rule 2, refuses or neglects to admit the facts within 7 days after the service on him of the notice or such longer time as may be allowed by the Court, the costs of proving the facts shall be paid by him unless the Court otherwise orders.

[ 929 ]

A P —Vol. 1 - 30

O. 62, r. 3]

RULES OF THE SUPREME COURT

62/3/1

(6) If a party—

(a) on whom a list of documents is served in pursuance of any provision of Order 24, or

(b) on whom a notice to admit documents is served under Order 27, rule 5,

gives notice of non-admission of any of the documents in accordance with Order 27, rule 4 (2) or 5 (2), as the case may be, the costs of proving that document shall be paid by him, unless the Court otherwise orders.

(7) Where a defendant by notice in writing and without leave discontinues his counterclaim against any party or withdraws any particular claim made by him therein against any party, that party shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim or his costs occasioned by the claim withdrawn, as the case may be, incurred to the time of receipt of the notice of discontinuance or withdrawal.

_____

Under paragraph (7) a plaintiff can discontinue against a third party only by Summons and not by Notice of Discontinuance

_____

(8) Where a plaintiff accepts money paid into Court by a defendant who counterclaimed against him, then, if the notice of payment given by that defendant stated that he had taken into account and satisfied the cause of action or, as the case may be, all the causes of action in respect of which he counterclaimed, that defendant shall unless the Court otherwise directs, be entitled to his costs of the counterclaim incurred to the time of receipt of the notice of acceptance by the plaintiff of the money paid into court.

(9) Where any person claiming to be a creditor—

(a) seeks to establish his claim to a debt under any judgment or order in accordance with Order 44, or

(b) comes in to prove his title, debt or claim in relation to a company in pursuance of any such notice as is mentioned in Order 102 rule 13

he shall, if his claim succeeds, be entitled to his costs incurred in establishing it, unless the Court otherwise directs, and, if his claim or any part of it fails, may be ordered to pay the costs of any person incurred in opposing it.

(10) Where a claimant is entitled to costs under paragraph (9), the amount of the costs shall be fixed by the Court unless it thinks fit to direct taxation and the amount fixed or allowed shall be added to the claimant's debt

(11) Where a claimant (other than a person claiming to be a creditor) having established a claim to be entitled under a judgment or order in accordance with Order 44 has been served with notice of the judgment or order pursuant to rule 3 or 15 of that Order, he shall, if he enters an appearance, be entitled as part of his costs of action (if allowed) to costs incurred in establishing his claim, unless the Court otherwise directs: and where such a claimant fails to establish his claim or any part of it he may be ordered to pay the costs of any person incurred in opposing it.

(12) Where an application is made in accordance with Order 24, rule 7A, or Order 29, rule 7A, for an order under section 21 of the Administration of Justice Act 1969 or section 31 or 32 of the Administration of Justice Act 1970, the person against whom the order is

[ 930 ]

Costs

sought shall be entitled, unless the Court otherwise directs, to his costs of and incidental to the application and of complying with any order made thereon and he may, after giving the applicant 7 days' notice of his intention to do so, tax such costs and, if they are not paid within 4 days after taxation, sign judgment for them

Amended by R.S.C. (Amendment No. 4) 1971 (S.I. 1971 No. 1269)

Rule 3 (1) only applies in relation to the right of a party to recover costs '' from any other party to the proceedings '', and will not therefore apply to the right of a mortgagee to retain costs out of a mortgaged property on redemption or to any other contractual right to costs out of a fund or from persons represented (but not themselves parties) to proceedings.                                                     **62/3/2**

Rule 3 (7) This Rule appears to apply only to withdrawal of a counterclaim. If a defendant discontinues third party proceedings it would seem that the third party must obtain an order for his costs.

## Agreed Costs.

It is not the practice to pay out agreed costs to solicitors without the personal knowledge of the party interested in such payment (*Re Coster*, [1898] W. N. 8), so that the Court will not substitute an agreed sum for a direction to tax until the personal waiver of taxation by the party out of whose fund the sum is to be paid has been produced (*ibid.*).

## Agreement as to Costs.

Where judgment is given for '' £ . . . with costs to be taxed '', the parties may agree the costs, in which case the agreed costs will (in Q. B. D.) be added to the judgment on production of the agreement, with the leave of a Master indorsed, in the judgment office. Where the judgment is for '' £ . . . and costs to be taxed or agreed '', the leave of a Master is not necessary. But in cases within r. 30, the costs must be taxed, not agreed. See (n) to that rule. See also Legal Aid (General) Regulations 1971, regs. 18 and 22, Vol. 2, Part 9B, *infra*, as to the position where taxation has been directed under the Legal Aid Act 1974

## '' Costs to be Paid on Usual Undertaking.''

After trial of an action counsel for the defendant may apply for a stay pending appeal. In such a case the Judge often gives a stay for a specified number of days and if within that time the amount awarded is paid into Court and the appeal entered, execution is further stayed until the determination of the appeal, also the taxation of costs proceeds and the costs are paid by the defendant to the plaintiff's solicitor on his personal undertaking to return the same if the appeal be successful.                                                     **62/3/3**

## Working Out Order.

Costs of suit include subsequent costs of working out the decree unless further consideration is reserved (*Krehl* v. *Park* (1875), L. R. 10 Ch. 334), and for an instance in bankruptcy, see *Re Laney, ex p. Cohen and Cohen (No. 1)*, [1920] 3 K. B. 625 Costs of a conveyance, agreed to be made as a term of a compromise of an action, embodied in an order, are costs incurred '' in arriving at or giving effect to a compromise . . . to bring to an end any proceedings '' within section 1 (5) of the Legal Aid and Advice Act, 1949 (*Clarendon Villas (No. 26) Hove Trusts, Copeland* v. *Houlton*, [1955] 1 W. L. R 1072; [1955] 3 All E. R. 178).

## Abortive Action.

While an action was pending, the plaintiff's right of action was taken away by Act of Parliament It was held that he was entitled to costs down to the date of the passing of the Act (*Orpen* v. *New Empire, Ltd.* (1931), 48 T. L. R 8).

## Action of Review.

Costs of Former Action.—A plaintiff who successfully sues to set aside a judgment wrongfully obtained against him in a former action is entitled to the costs of the former action as well as those of the action of review (*Sturrock* v. *Littlejohn* (1898) 68 L. J. Q. B 165).                                                     **62/3/4**

## Costs '' In and About '' an Action.

See (n.) to r. 2

O. 62, r. 3]

RULES OF THE SUPREME COURT

**" Costs of the Day."**

This means " all costs incurred and which will be thrown away " (*Burgoine* v. *Taylor* (1878), 47 L. J. Ch. p. 543) " in consequence of the postponement of a cause and not merely £10 " (*Lydall* v. *Martinson* (1877), 5 Ch. D. 780).

**" Costs Reserved."**

Rule 4 (1) (n.) " Reserved Costs ".

**" Costs Thrown Away."**

62/3/5

This is an order frequently made on an application to set aside a judgment. It is one of the penalties imposed upon a defendant who, having failed to observe the rules as to appearance or delivery of defence, has allowed judgment to be entered by default. The words " costs thrown away " include all costs reasonably incurred in enforcing the judgment such as execution and garnishee proceedings, but do not include bankruptcy proceedings which are outside the Action (*Andromeda, etc.* v. *Holme* (1923), 130 L. T. 929, C. A.). It may, however, be made a term of the order to set aside that the costs of bankruptcy proceedings shall be paid by the defendant. The words do not necessarily include the costs of the application to set aside. These should be specially provided for. See also (n) " Costs Thrown Away " to r. 2.

**" Plaintiff's (or Defendant's) Costs in Cause."**

This is a form of order the meaning of which is not always understood. In most cases the costs of a summons will be (i) costs in the cause, or (ii) plaintiff's (or defendant's) costs in any event. But there is a half-way order which involves that the party in whose favour it is made will get them if he wins his action, and will not have to pay them if he loses. This is an order in the form " plaintiff's (or defendant's) costs in cause ". It might be made where one of the parties acted unreasonably. Where an action is discontinued " costs in cause " are applicable to be considered as part of the costs of the defendant.

62/3/6

**Costs Borne by Party Amending.**—Effect in practice is the same as if the amendment had been made under an order giving the other side the costs " in any event ". If the plaintiff succeeds in the action, after amending under O. 20, r. 3, *supra*, the defendant is still entitled, in the absence of any order to the contrary, to bring in on the general taxation a bill of the costs of and occasioned by the amendment, and to have those costs deducted from the plaintiff's costs. There is usually no taxation of such costs against an assisted party unless his liability to pay has been determined under the Legal Aid Act 1974, s. 8 (1).

**" Usual terms."**

This is an abbreviation often to be found in an order giving leave to amend. Where a Master in the Queen's Bench Division indorses a summons " Leave to amend on usual terms ", the following words will appear in the order: " The costs incurred and thrown away by this amendment and the costs of any consequent amendment to be the (plaintiff's or defendant's) in any event "

These words would appear to be equivalent to the phrase of North, J., in *Preston Corporation* v. *Fulwood Local Board (No. 2)* (1885), 34 W. R. 200. If any more extensive order is desired, special variation in the Master's indorsement should be obtained

**Adjournment.**

62/3/7

**Of Summons into Court in Ch. D.**—Since an adjournment into Court is merely a continuation of the hearing in Chambers (*Leeds* v *Lewis* (1857), 3 Jur (N s.) 1290), the costs of such adjournment follow the same rule as the costs in Chambers (*Dicken* v *Homer* (1860), 2 L. T. 276; *Wallis* v *Bastard* (1854), 2 W R. 47). Where a valid objection to jurisdiction was first taken in Court the defendants were not allowed the costs of the adjournment (*Re Wm. Davies* (1888), 38 Ch D 210)

**Of Trial.**—Under O 35, r. 3, this is usually granted on the terms of payment by the applicant of the actual costs of the day, that is, " such costs as have been incurred by the action standing in the paper for hearing on those days on which it stood in the paper " (*Lydall* v *Martinson* (1877), 5 Ch D. 780), or as in *Burgoine* v. *Taylor* (1878), 47 L J Ch., p 543, " all costs incurred and which will be thrown away in consequence " thereof

[ 932 ]

*Exhibit "F"*

# THE

# SUPREME COURT PRACTICE

## 1976

### VOLUME 1

### PART 1

LONDON

SWEET & MAXWELL LTD.          STEVENS & SONS LTD.

11 NEW FETTER LANE, LONDON EC4P 4EE

BUTTERWORTH & CO. (PUBLISHERS) LTD.

88 KINGSWAY WC2B 6AB

EXHIBIT

F

ORDER 33

(R. S. C. 1965)

PLACE AND MODE OF TRIAL

**Place of trial** (O. 33, r. 1).

33/1        1. Subject to the provisions of these rules, the place of trial of a
cause or matter, or of any question or issue arising therein, shall be
determined by the Court and shall be either the Royal Courts of
Justice or one of the other places at which sittings of the High Court
are authorised to be held for the trial of those proceedings or proceed-
ings of the class to which they belong.

---

Amended by R.S.C. (Amendment No. 5) 1971 (S.I 1971 No 1955).

33/1/1      **Scope of Order.**—This Order is new, but it conveniently gathers together several
rules in the different parts of the former R. S. C. dealing with the place and mode
of trial.  The only material change is the omission of the former O. 34 (except r. 2)
dealing with Special Cases, (see now rr. 2 & 3, infra).

**Effect of Rule 1.**—This Rule is new in the sense that it did not appear in this form
in the previous R. S. C., but it makes no change of substance.  The trial of a cause
or matter in the High Court or of any question or issue arising therein must take
place either at the Royal Courts of Justice or at a place at which the High Court
is authorised to sit for the trial of such cause or matter, question or issue.  The Lord
Chancellor may give an ad hoc direction authorising the Court to sit at a specified
place e g  at Iken, Suffolk (see St. Edmundsbury and Ipswich Diocesan Board of
Finance v. Clark [1973] Ch. 323; [1973] 2 W.L.R. 1042, 1048, [1973] 3 All E.R
902)   An exception exists in the case of a trial or other proceeding before a Circuit
judge discharging the functions of an Official Referee which may be " at any place
which appears to him to be convenient " (O. 36, r  4 (3), infra).  The amendment of
Rule 1 embodies the radical changes effected by the Courts Act 1971, which by s 1
abolished courts of assize and by s. 2 (1) enables sittings of the High Court to be
held, and any other business of the High Court to be conducted, at any place in
England or Wales.  Subject to Rules of Court, the places at which the High Court
sits outside the Royal Courts of Justice and the days and duties of such sittings are
to be determined in accordance with directions given by or on behalf of the Lord
Chancellor (s. 2 (2) of the Act)

33/1/2      **Queen's Bench actions.**—The places at which sittings of the High Court are
authorised to be held, which will apply in particular to the trial of Queen's Bench
actions, are the following trial centres, namely
        In the Midland and Oxford Circuit, Birmingham, Lincoln. Nottingham, Stafford,
Warwick
        In the North-Eastern Circuit, Leeds, Newcastle upon Tyne, Sheffield, Teesside
        In the Northern Circuit, Carlisle, Liverpool, Manchester, Preston
        In the South-Eastern Circuit, Greater London, Norwich.
        In the Wales and Chester Circuit, Caernarvon, Cardiff, Chester, Mold, Swansea
        In the Western Circuit, Bodmin, Bristol, Exeter, Winchester
(See Directions given by the Lord Chancellor in the House of Lords [1972] 1
W L R  1 and Directions given by him in the House of Lords, June 14, 1973
        For the addresses and telephone numbers of the Circuit Administrators and the
Court Administrators, see Vol. 2, Part 4 I, " Circuit Arrangements," paras  1045
et seq , infra

33/1/3      **Chancery actions.**—The places at which sittings of the High Court are authorised
to be held for the trial of causes or matters in the Chancery Division out of London
are Leeds, Liverpool, Manchester, Newcastle upon Tyne and Preston (see Practice
Direction (Chancery Proceedings outside London) [1972] 1 W L R  1, [1972] 1
All E R  103)

**Mode of trial** (O  33, r. 2).

33/2        2  Subject to the provisions of these rules, a cause or matter, or
any question or issue arising therein, may be tried before—

[ 826 ]

**[O. 33, rr. 2, 3**

    (a)  a judge alone, or
    (b)  a judge with a jury, or
    (c)  a judge with the assistance of assessors, or
    (d)  an official referee with or without the assistance of assessors, or
    (e)  a master, or
    (f)  a special referee

---

**Effect of Rule.**—This Rule is new, but it conveniently tabulates the different modes of trial in the High Court                             **33/2/1**
    For trial by a Circuit judge discharging the functions of an Official Referee, see O 36, rr 1-7, *infra*  by Special Referee, see O 36, r 8, *infra*  by Master, see O 36, r 9, *infra*, and O 14, r 6 (2), *supra*.

## Time, etc. of trial of questions or issues (O. 33, r. 3).

    **3.** The Court may order any question or issue arising in a cause    **33/3**
or matter, whether of fact or law or partly of fact and partly of law,
and whether raised by the pleadings or otherwise, to be tried before,
at or after the trial of the cause or matter, and may give directions as
to the manner in which the question or issue shall be stated.

---

**Effect of Rule.**—This Rule is taken from part of the former O 34, r. 2, which dealt   **33/3/1**
with special cases by order before trial, but is wider in terms, for unlike the former
rule which only applied to questions of law, this Rule applies also to questions of fact
and questions partly of fact and partly of law.
    Under this Rule, the Court can, if necessary, direct that a question or issue
shall be stated by or in the form of a special case (see *Duncan* v. *Lambeth London
Borough Council*, [1968] 1 Q.B 747, [1968] 2 W.L R. 88), but the parties cannot
under this Rule agree between themselves, with obtaining the order of the Court,
to state questions of law in the form of a special case  If a special case is
directed by the Court, it should be signed by counsel if settled by him, otherwise it
should be signed by the solicitors or by the parties if appearing in person.  The
former practice with regard to the filing of a special case and its entry for argument
no longer prevails
    This Rule should be read with O. 18, r. 11, *supra* (raising a point of law on the
pleading) and with r. 4 (2), *infra* (trial of preliminary issues)
    Under this Rule the Court has power to try a preliminary question of law at the
outset.  Such question may have been raised on the pleadings (see O 18, r. 11 (nn ))
and may be ordered to be tried on the pleadings or on a case stated or an agreed
statement of facts, and such order will be made on the hearing of a summons for
directions if not earlier  Or the Court may at the trial order a question of law to be
tried first (see *Pooley* v. *Driver*, 5 Ch. D. 460).
    This Rule may be conveniently employed in commercial cases for the decision of
preliminary questions of law.
    Only such questions of law can properly be raised as preliminary issues as must
necessarily arise in the action (*Republic of Bolivia* v. *Bolivian Navigation Co.*, 24
W R. 361), and the Court will not decide fictitious questions or questions in which
those who are interested, or are likely to be, are not present or are not in esse
(*Bright* v. *Tyndall*, 4 Ch  D. 189, and cases there referred to, *Sumner* v. *William
Henderson & Sons*, [1963] 1 W. L R 823; [1963] 2 All E. R 712n., C. A.
    There are disadvantages in ordering the trial of a preliminary point of law on
assumed facts (see *per* Lord Wilberforce and *per* Lord Pearson in *Att.-Gen.* v.
*Nissan* [1969] 2 W L.R 926; [1969] 1 All E R 629 H L)
    Where for the purposes of deciding questions of law it is necessary or desirable
to ascertain the facts beyond those that appear in the pleadings, the Court should
not order the trial of those questions as a preliminary point of law especially where
the law is itself unsettled or obscure  e.g  whether a Colonel in the U S Air Force
is entitled to absolute privilege in an action against him for libel by a civilian
employee in the same Force (*Richards* v *Naum* [1967] 1 Q B 620 C.A )
    An " issue " which involves dealing with the whole subject matter of the action
without any evidence is not a preliminary point and should not be ordered to be
tried as such (*Radstock Co operative and Industrial Society Ltd* v *Norton-Radstock
U D C* [1968] Ch. 605, [1968] 2 W L R 1214, C A )



# THE STATUTE LAW

OF

# THE BAHAMAS

### 1799—1987

IN FORCE ON THE

### 30th June, 1987

As amended by the Statute Law Revision Act, 1987

—

### REVISED EDITION.

Prepared under the authority of The Law Reform and Revision Act, 1975

BY

SIR GORDON BRYCE, C.B E
of the Middle Temple, Barrister-at-Law

---

## IN EIGHT VOLUMES AND A SUPPLEMENTARY VOLUME

# VOLUME I

Containing The Constitution to Chapter 51

—

PUBLISHED BY THE GOVERNMENT OF THE COMMONWEALTH OF THE BAHAMAS

PRINTED BY
A. Wheaton & Co Ltd, Exeter
1988

EXHIBIT
G

# CHAPTER 47.

## JURIES.

AN ACT TO MAKE BETTER PROVISION FOR THE SELECTION OF
PERSONS TO SERVE AS JURORS IN THE SUPREME COURT AND
FOR THE REGULATION OF TRIALS BY JURY THEREIN.

30 of 1967
8 of 1971
E L A O   1974
2 of 1980

*[15th November, 1967.]*
*[Commencement 1st January, 1968.]*

## PRELIMINARY.

**1.** This Act may be cited as the Juries Act.     Short title.

**2.** In this Act unless the context otherwise requires     Interpretation

"court" means the Supreme Court;

"jury service" in relation to any person means
service as a juror in any civil or criminal
proceedings triable by jury at any sessions;

"Registrar" means the Registrar of the court, or his
deputy;

"revising panel" means the panel constituted by
section 6 of this Act;

"sessions district" has the meaning assigned to it by
section 5 of this Act;

"sessions" means a sessions of the court.

## JURORS.

**3.**—(1) Every male person between the ages of
twenty-one and sixty years and resident in a sessions
district shall be qualified for jury service.

Qualifications
for jury service

(2) Any female person between the ages of twenty-
one and sixty years resident in a sessions district may
apply in the manner prescribed by subsection (3) of this
section to have her name entered upon the jury list and
thereupon she shall be qualified for jury service.

2 of 1980 s 2

(3) Any woman who desires to be enrolled for jury
service may, on or before the first day of November in

2 of 1980. s 2



any year, apply in writing to the Registrar, stating her full name and address and her date of birth; and upon receipt of any such application, the Registrar shall, subject to subsection (4) of this section, cause it to be taken into account by the revising panel in the preparation of the jury list.

*2 of 1980. s. 2*

(4) Any woman who desires to have her name removed from the jury list for any year may on or before the first day of December of the preceding year apply in writing to the Registrar and upon receipt of any such application, the Registrar shall cause it to be taken into account by the revising panel in the preparation of the relevant jury list for the next ensuing year.

*Exemptions and disqualifications from jury service.*
*First Schedule*

4. Notwithstanding anything contained in section 3 of this Act —

(a) the persons specified in the First Schedule shall be exempt from jury service to the extent set out in that Schedule; and

*Second Schedule*

(b) the persons specified in the Second Schedule shall be disqualified from jury service.

*Sessions districts.*

5.—(1) The Island of New Providence shall be a sessions district for the holding of sessions of the court.

*E.L.A.O 1974.*

(2) The Chief Justice may by order declare any one or more Out Island Districts or part thereof to be a sessions district for the holding of sessions of the court.

(3) No juror shall be required to perform jury service otherwise than at a sessions of the court held within the sessions district in which he is for the time being resident and for which his name is entered in the jurors book as hereinafter provided.

## JURY LIST.

*Revising panel.*

6. There shall be a revising panel, consisting of the Registrar, who shall be Chairman, the Parliamentary Registrar and the Provost Marshall or his deputy.

*Jury lists*

7.—(1) It shall be the duty of the revising panel, on or before the fifteenth day of December in each year, to

upon the trial thereof to separate and depart from the court during any adjournment of such trial before they have retired to consider their verdict upon each such juror taking the oath prescribed by section 13(3) of the Oaths Act                                                    Ch 48

(2) The following provisions shall apply whenever the jury have not been permitted to separate—

    (a) a proper provision shall be made for preventing the jury from holding communication with any person;

    (b) the judge may allow one or more of the jurors to separate from the other jurors;

    (c) jurors who are allowed to separate from the other jurors shall not hold communication with other persons except with the leave of the court;

    (d) jurors who are allowed to separate shall remain in the charge of the officer of the court who has charge of them.

29.—(1) The judge may, in his discretion, in case of any emergency or casualty rendering it, in his opinion, expedient for the ends of justice so to do, discharge the jury without their giving a verdict, and direct a new jury to be empanelled during the sessions or may postpone the trial on such terms as justice may require.                    Discharge of jury in certain circumstances.

(2) If the judge becomes incapable of trying the case or directing the jury to be discharged, the Registrar shall discharge the jury.

(3) Without prejudice to the power of the judge to discharge the jury under the provisions of subsection (1) of this section, whenever a juror dies or fails to appear at any adjournment of the trial or becomes too ill to continue to serve or if it appears to the judge that a juror empanelled is not indifferent between any of the parties to the proceedings, then in any such case the judge may in his discretion if all the parties consent, proceed with the trial with the remaining eleven jurors, and take their verdict which shall then have the same effect as the verdict of the whole number.

## MISCELLANEOUS.

30.—(1) Every juror who is sworn in any case shall be entitled to a fee of five dollars for each day or part of a day during which he attends at the court during the trial of the case for which he is so sworn.                    Jurors' fees

(2) Every juror who attends court during any sessions for trial of criminal cases shall be entitled to a fee of three dollars for each day on which he is required so to attend but is not sworn to try any such case.

(3) In every civil case listed for trial with a jury the amount of sixty dollars on account of jurors' fees shall be paid to the Registrar by the plaintiff before the jury is sworn and if it is not so paid the court shall, unless it sees fit to allow an adjournment, dismiss the case or enter judgement for the defendant.

(4) All jurors' fees in civil cases shall be recoverable as a fee of court from the plaintiff but may be allowed as costs in the cause against any other party to the proceedings.

**Accommodation, maintenance and refreshment of jurors.** 31.—(1) In any case where the members of the jury empanelled are required by the court not to separate before returning their verdict, they shall be entitled to be reasonably accommodated and maintained at the public expense under arrangements to be made by or on behalf of the Registrar.

(2) Reasonable refreshment at the public expense shall be provided for members of a jury empanelled in any case when they have retired to consider their verdict.

**View** 32. Where in any case it is made to appear to the judge that it will be for the interests of justice that the jury who are to try or are trying the issue in the case, should have a view of any place, thing, or person connected with the issue, he may direct a view to be had, in such manner and upon such conditions as he may think proper.

**Fines for non-attendance or refusal to serve.** 33.—(1) If any person, having been duly summoned to attend as a juror, does not attend in obedience to the summons at the first sitting of the court and at every adjournment thereof upon being openly called in court, or if he departs from the court during its sitting without leave of the judge and without reasonable excuse the court may impose on him a fine of not more than one hundred dollars.

(2) If any person, having been duly summoned to serve as a juror, refuses to serve when required by the court so to do, or if, after having been duly sworn he without leave departs the court before verdict given or before he is regularly discharged, the court may impose on him a fine of not more than one hundred dollars.